853 F.2d 692
 57 USLW 2117
 Diana PETERS, Manager, Walla Walla Labor Camp, Petitioner-Appellant,
v.
UNITED STATES of America; Michael J. Bower, Criminal
Investigator of Immigration and Naturalization
Service, Petitioners-Appellees,
and
Jose Garcia; Maria E. Ornelas; Elias Vasquez; Guadalupe
Villalobos; Trinidad Herebia, Intervenors.
 No. 86-3831.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 8, 1987.
Decided Aug. 2, 1988.
 
 Rebecca Smith, Everett, Wash., John Junke and Daniel N. Clark, Walla Walla, Wash., for petitioner-appellant and intervenors.
 Ellen Sue Shapiro, Civil Div., Washington, D.C., for petitioners-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before ALARCON* and BEEZER, Circuit Judges, and NIELSEN,** Senior District Judge.
 BEEZER, Circuit Judge:
 
 
 1
 The Immigration and Naturalization Service (INS) seeks enforcement of a third-party subpoena directed at the Walla Walla Labor Camp. The third-party subpoena was issued in connection with a general criminal investigation of a group of unnamed tenants at the camp who may be undocumented aliens. The manager of the camp, Diana Peters, and tenant intervenors resist the subpoena on the grounds that it exceeds the INS's authority and violates the fourth amendment. Because we hold that 8 U.S.C. Sec. 1225(a) does not authorize the INS to issue a group "John Doe" subpoena, we quash the subpoena.
 
 
 2
 * The Walla Walla Labor Camp provides housing for approximately 150 families engaged in farm labor. It receives funding from the Farmers Home Administration (FmHA), which requires it to maintain tenant records.[1] The records include information about United States residency, employment, salary, unearned income, vehicles, and prior tenancy.
 
 
 3
 In November 1984, INS agent Michael Bower asked the camp for permission to examine its tenant files. He stated that he wished to inspect the files in connection with an INS program aimed at preventing undocumented aliens from receiving subsidized housing. Citing the privacy rights of its tenants, the camp refused to permit inspection of its files.
 
 
 4
 In December 1984, the INS served Diana Peters, the camp manager, with a subpoena. The subpoena ordered her to appear before "Michael J. Bower, Criminal Investigator," to give testimony in connection with "a criminal investigation proceeding" relating to "undocumented aliens residing at the Walla Walla Labor Camp concerning their immigration status in the United States." It further ordered her to bring "all records relating to persons residing at the Walla Walla Labor Camp including but not limited to Preliminary Applications for Farmworkers Housing, Applications for Farmworkers Housing, Contracts for Farmworkers Housing, any other documents that would identify those persons residing at the Walla Walla Labor Camp." Because of privacy concerns, Peters refused to comply with the subpoena.
 
 
 5
 In April 1985, the INS initiated an enforcement proceeding in the district court. The petition stated that the INS was "conducting a criminal investigation under authority of the Immigration and Nationality Act relating to undocumented aliens residing at Walla Walla Labor Camp." It further stated that Peters was directed "to give testimony and to produce books, papers and documents" in connection with the investigation of suspected undocumented aliens at the camp. Peters responded with a motion to quash, arguing that the subpoena was, inter alia, outside the INS's authority, overbroad, and contravened the fourth amendment. A number of tenants obtained leave to intervene and joined Peters' motion.
 
 
 6
 In March 1986, the district court ruled in favor of the INS. It reasoned that 8 U.S.C. Sec. 1225(a), especially as construed by United States v. Minker, 350 U.S. 179, 184-85, 76 S.Ct. 281, 285, 100 L.Ed. 185 (1956), granted the INS broad subpoena power. As to its authority to issue the subpoena without identifying particular individuals under investigation, the district court relied heavily on the Internal Revenue Service's (IRS) authority to issue "John Doe summonses." Because section 1225(a) contained no express prohibition against John Doe subpoenas, the district court in effect imputed IRS John Doe summons law onto INS subpoena law. The court was nonetheless troubled that the INS could issue a subpoena seeking information about a group of unknown individuals without a showing that it was not conducting a mere fishing expedition. Before enforcing the subpoena, therefore, the court required the INS, as the IRS must do before issuance of a John Doe summons, to demonstrate that it possessed a reasonable basis for believing that camp residents were violating the immigration laws.[2]
 
 
 7
 In compliance with the court's order, the INS produced an affidavit from agent Bowers. The affidavit stated that he had arrested approximately 300 undocumented aliens at the camp in his 11-year tenure; that he had arrested 19 there in 1984; and that he had received numerous complaints regarding "illegals" at the camp during 1984-85. Finding the affidavit sufficient, the district court ordered enforcement of the subpoena. In its second order, the court conceded that it had, by analogy, imposed on the INS the same burden that the IRS is required to meet prior to its issuance of a John Doe summons under 26 U.S.C. Sec. 7609(f). Peters and the tenants timely appeal. Pending appeal, a motions panel of this court granted a stay.
 
 II
 
 8
 The scope of the INS's subpoena power and the consistency of the subpoena with the fourth amendment are questions of law which we review de novo. See United States v. McConney, 728 F.2d 1195, 1200-02 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 9
 Peters and the tenants maintain that (1) the INS has authority to issue subpoenas only in connection with specific proceedings against known individuals, and may not issue a general group subpoena against unidentified individuals in an unspecified criminal investigation; and (2) the use of the group subpoena against the labor camp files contravenes the fourth amendment. The INS responds that (1) Congress has given it broad authority to issue subpoenas for information relating to immigration status of persons residing in housing projects for farm laborers; and (2) this administrative subpoena does not infringe on the fourth amendment.
 
 III
 
 10
 The threshold issue before us is whether Congress has authorized the INS to issue blanket John Doe subpoenas to enforce the Immigration and Nationality Act (Act), similar to the manner in which the IRS is authorized to seek issuance of John Doe summonses.[3] To be sure, the INS possesses broad subpoena and investigatory power. After a full review of the record, however, we conclude that it was error for the district court to impute IRS John Doe summons law onto INS subpoena law without specific authorizing legislation. Although 8 U.S.C. Sec. 1225(a) grants the INS wide subpoena authority, it is not without limits so as to allow us to infer the authority to issue group John Doe subpoenas.
 
 Title 8, U.S.C. Sec. 1225(a) provides:
 
 11
 The Attorney General and any immigration officer ... shall have power to require by subpoena the attendance and testimony of witnesses ... and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this [Act] and the administration of the Service....
 
 
 12
 (Emphasis added.) Given this broad language, the INS's subpoena power encompasses both civil and criminal proceedings since both are part of the Act. See 8 U.S.C. Secs. 1251(a)(2) (civil deportation), 1306(d), 1325, 1326 (criminal prosecution for, respectively, use of counterfeit documents, entry without inspection, reentry after deportation). Although section 1225(a) appears in a part of the Act that describes the powers of INS agents at the border, the Supreme Court has reasoned:[If the relevant language] had merely read "and any other matter which is material and relevant," the doctrine of ejusdem generis would appropriately be invoked to limit the subpoena power to an investigation pertaining to questions of admission and deportation. The comprehensive addition of the clause "or concerning any matter which is material and relevant to the enforcement of this Act ..." precludes such narrowing reading. "Act" encompasses the full range of subjects covered by the statute.... "[T]he title of a statute and the heading of a section cannot limit the plain meaning...."
 
 
 13
 Minker, 350 U.S. at 184-85, 76 S.Ct. at 285 (citation omitted). The Supreme Court has also recognized the broad investigatory power of administrative agencies:
 
 
 14
 Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.
 
 
 15
 United States v. Morton Salt Co., 338 U.S. 632, 642-43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950). Despite the INS's concededly broad subpoena and investigatory authority, we are reluctant to assume the existence of the power to issue third-party subpoenas directed at unidentified targets where Congress has not provided for them specifically, nor provided procedural safeguards.
 
 
 16
 The authority of an administrative agency to issue subpoenas for investigatory purposes is created solely by statute. 3 B. Mezines, J. Stein & J. Gruff, Administrative Law Sec. 20.02 (1988). The Supreme Court first allowed enforcement of an IRS John Doe summons in United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), after it concluded that such a summons--where the target of the investigation is unknown--is rooted in the language and policies of the IRS Code. Id. 144-51, 95 S.Ct. at 918-21.
 
 
 17
 In Bisceglia, the IRS issued a section 7602 summons to a bank for the purpose of identifying an unnamed individual who had deposited a large amount of money in severely deteriorated bills. The Court first discussed the unique policies underpinning the efficacy of the federal tax system. For example, it observed that this country's tax structure is based on a system of self-reporting. Id. at 145-46, 95 S.Ct. at 918. Because some persons would attempt to outwit the system and tax evaders are not readily identifiable, the Court noted that section 7601 gives the IRS a broad mandate "to investigate and inquire after 'all persons ... who may be liable to pay any internal revenue tax....' " Id. at 149, 95 S.Ct. at 920 (emphasis to section 7601 added by Court); see also id. at 145, 95 S.Ct. at 918. To aid in this investigative function, the Court reasoned, section 7602 "provides the power to 'examine any books, papers, records, or other data which may be relevant ... [and to summon] any person having possession ... of books of account ... relevant or material to such inquiry.' " Id. at 145-46, 95 S.Ct. at 918-19; see also id. at 149, 95 S.Ct. at 920 (stating that "Sec. 7602 authorizes the summoning of 'any ... person' for the taking of testimony and examination of books which may be relevant for 'ascertaining the correctness of any return, ... determining the liability of any person ... or collecting any such liability....' ") (emphasis to section 7602 added by Court). The Court concluded:
 
 
 18
 Plainly, this language is inconsistent with an interpretation that would limit the issuance of summonses to investigations which have already focused upon a particular return, a particular named person, or a particular potential tax liability.
 
 
 19
 Id. The Court thus held that the summons was enforceable on the facts of the case. Id. at 150-51, 95 S.Ct. at 921. The Court recognized that the district court had made certain that the section 7602 summons power was not used to conduct "fishing expeditions" by allowing the summons to be "no broader than necessary to achieve its purpose." Id.
 
 
 20
 In their concurring opinion, Justices Blackmun and Powell were careful to reinforce that the holding in Bisceglia was a narrow one limited to the circumstances of the case. See id. at 151-52, 95 S.Ct. at 921-22 (Blackmun, J., concurring). "We need not decide in this case whether the Service has statutory authority to issue a 'John Doe' summons where neither a particular taxpayer nor an ascertainable group of taxpayers is under investigation." Id. at 152, 95 S.Ct. at 922 (Blackmun, J., concurring).
 
 
 21
 In response to Bisceglia, Congress specifically provided procedures for the issuance of John Doe summonses in the Tax Reform Act of 1976, Pub.L. No. 94-455, 90 Stat. 1520. In particular, Congress provided that the IRS cannot serve a summons seeking information on the tax liabilities of unnamed taxpayers without first obtaining prior judicial approval in an ex parte proceeding. 26 U.S.C. Sec. 7609(f), (h)(2).
 
 
 22
 The House and Senate reports accompanying the bill that became section 7609(f) first observed that 26 U.S.C. Sec. 7602 granted the IRS "the authority to issue a summons to 'any person' having possession or custody of records 'relating to the business of the person liable for tax.' "[4] H.R.Rep. No. 658, 94th Cong., 2d Sess. 306 (1976) 1976 U.S.Code Cong. & Admin.News 1976, pp. 2897, 3202 (hereinafter H.R.Rep. No. 658); S.Rep. No. 938, 94th Cong., 2d Sess., pt. 1, at 367-68 (1976) 1976 U.S.Code Cong. & Admin.News, pp. 3796, 3797 (hereinafter S.Rep. No. 938).
 
 
 23
 In certain cases where the [IRS] has reason to believe that certain transactions have occurred which may affect the tax liability of some taxpayer, but is unable for some reason to determine the specific taxpayer who may be involved, the [IRS] may serve a so-called "John Doe" summons, which means that books and records relating to certain transactions are requested, although the name of the taxpayer is not specified.
 
 
 24
 H.R.Rep. No. 658, at 306, 1976 U.S.Code Cong. & Admin.News, p. 3202; S.Rep. No. 938, at 368, 1976 U.S.Code Cong. & Admin.News, p. 3797.
 
 
 25
 Although recognizing that third-party summonses were important investigatory tools, Congress expressed concern that the standards enunciated in Bisceglia might "unreasonably infringe on the civil rights of taxpayers, including the right to privacy." H.R.Rep. No. 658, at 307, 1976 U.S.Code Cong. & Admin.News, p. 3203; S.Rep. No. 938, at 368, 1976 U.S.Code Cong. & Admin.News, p. 3797; see Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 316, 105 S.Ct. 725, 728, 83 L.Ed.2d 678 (1985). Congress made clear that it did "not intend that the John Doe summons is to be available for purposes of enabling the [IRS] to engage in a possible 'fishing expedition.' " H.R.Rep. No. 658, at 311, 1976 U.S.Code Cong. & Admin.News, p. 3707; S.Rep. No. 938, at 373, 1976 U.S.Code Cong. & Admin.News, p. 3802. Congress accordingly "decided that the IRS agent should be required to show adequate grounds for serving the summons in an independent review process before any [John Doe] summons can be served." H.R.Rep. No. 658, at 307, 1976 U.S.Code Cong. & Admin.News, p. 3203; S.Rep. No. 938, at 368, 1976 U.S.Code Cong. & Admin.News, p. 3797. When it seeks authorization to serve a John Doe summons, the IRS must "have specific facts concerning a specific situation to present to the court." H.R.Rep. No. 658, at 311, 1976 U.S.Code Cong. & Admin.News, p. 3802; S.Rep. No. 938, at 373, 1976 U.S.Code Cong. & Admin.News, p. 3802.
 
 
 26
 As a result, Congress enacted section 7609 for cases in which the IRS does not know the identity of the taxpayer under investigation:[5]
 
 
 27
 Special procedures for third-party summonses
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 (f) Additional requirement in the case of a John Doe summons.--Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that--
 
 
 31
 (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
 
 
 32
 (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
 
 
 33
 (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.
 
 
 34
 26 U.S.C. Sec. 7609(f) (emphasis added); see also Id. Sec. 7609(h)(2) (providing that these determinations be made ex parte ).[6] By requiring district court authorization before the IRS could issue John Doe summonses, Congress sought to allay its concern that Bisceglia did not provide sufficient restraints on the IRS's exercise of its summons power. Tiffany Fine Arts, 469 U.S. at 317, 105 S.Ct. at 728.
 
 
 35
 The INS essentially argues that the district court was correct in recognizing that the breadth of the INS subpoena power was sufficient to infer IRS-type authority to issue John Doe subpoenas. We disagree. The IRS's authority to issue John Doe summonses is firmly rooted in the language and policies of the revenue laws. See 26 U.S.C. Secs. 7601, 7602, 7609(f); Biscelegia, 420 U.S. at 144-51, 95 S.Ct. at 918-21; see also United States v. Euge, 444 U.S. 707, 715-16 & n. 9, 100 S.Ct. 874, 880 & n. 9, 63 L.Ed.2d 141 (1980) (recognizing "congressional intent to uphold the claimed enforcement authority of the [IRS] if authority is necessary for the effective enforcement of the revenue laws" and noting that Congress has provided the IRS "with broad latitude to adopt enforcement techniques helpful in the performance of [its] tax collection and assessment responsibilities [as] expressed throughout the Code"). Moreover, Congress has provided unique procedural safeguards to protect the unknown parties.
 
 
 36
 By contrast, section 1225(a) clearly does not reflect the same language, authorization, safeguards, or policy underpinnings from which we can reasonably infer that Congress intended the INS to possess the authority to issue John Doe subpoenas. The district court assumed the existence of the INS's authority to issue the instant subpoena, observing that section 1225(a) "contains no express prohibition against the issuance of a 'John Doe' subpoena." It based its conclusion on an expansive reading of section 1225(a) that transplanted IRS summons law onto INS subpoena law. In doing so, the court ignored that the IRS John Doe summons power is exercised pursuant to specific legislative direction in an area heavily explored by both Congress and the courts and under an enforcement system that is different from that of the INS. The Supreme Court has characterized as "treacherous business" such imputations of power from one agency to an entirely different agency. FTC v. Bunte Bros., Inc., 312 U.S. 349, 353, 61 S.Ct. 580, 582, 85 L.Ed. 881 (1941). In view of the foregoing, we conclude that it was improper to expand the INS' subpoena power by analogizing from IRS summons law without a statutory basis other than INS subpoena power being broad.
 
 
 37
 Although the district court imputed IRS John Doe summons law onto INS subpoena law, the analogous "fit" was not exact. By means of section 7609(f), Congress left issuance of the John Doe summons within the discretion of the courts, whereas the district court here enforced the INS's John Doe subpoena after the INS sua sponte issued it. Section 7609(f) requires court authorization before a John Doe summons may be issued by the IRS, and then only if the IRS demonstrates, to the satisfaction of the district court judge, that (1) the summons relates to the investigation of an ascertainable person or class of persons; (2) there exists a "reasonable basis for believing" that some or all of that class may have failed to comply with the tax laws; and (3) that the information sought cannot be readily obtained elsewhere. 26 U.S.C. Sec. 7609(f); see Samuels, Kramer, 712 F.2d at 1345. The district court also expressly imposed the reasonable basis requirement on the INS at the enforcement stage, whereas section 7609(f)(2) requires the IRS to make such a showing before a John Doe summons may be issued.
 
 
 38
 Because Congress has not specifically authorized the INS to issue blanket John Doe subpoenas nor provided procedural safeguards for their issuance, we will not infer such authority in the otherwise broad grant of authority in 8 U.S.C. Sec. 1225(a).[7] The district court erred in concluding that section 1225(a) granted the INS the same John Doe subpoena authority that the IRS possesses under 26 U.S.C. Sec. 7609. Accordingly, we quash the subpoena.
 
 IV
 
 39
 Our conclusion that Congress has not authorized the INS to issue group John Doe summonses is further supported by the limits that case law necessarily imposes on the INS's otherwise broad subpoena power, as well as the INS's failure to point to a single case in which it was permitted to exercise its supposed John Doe subpoena power in connection with a general investigation of unnamed individuals.
 
 
 40
 The scope of our judicial inquiry in an agency subpoena enforcement proceeding is (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation. EEOC v. Children's Hosp. Medical Center, 719 F.2d 1426, 1428 (9th Cir.1983) (en banc). Even if these factors are shown by an agency, the subpoena will not be enforced if it is too indefinite or broad. See id. (reasoning that subpoena will not be enforced if agency's inquiry is unreasonable because it is overbroad); NLRB v. International Medication Sys., 640 F.2d 1110, 1114 (9th Cir.1981) (reasoning that a court will enforce an agency subpoena if, inter alia, it "is not needlessly broad"), cert. denied, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 134 (1982); General Ins. Co. v. EEOC, 491 F.2d 133, 136 (9th Cir.1974) (affirming district court's refusal to enforce agency's demand for access to evidence because it was unduly broad); Morton Salt Co., 338 U.S. at 652, 70 S.Ct. at 369 (stating that an agency's inquiry is sufficient if, inter alia, "the demand is not too indefinite"); see also Midwest Growers Co-op. v. Kirkemo, 533 F.2d 455, 461 (9th Cir.1976). An administrative subpoena thus may not be so broad so as to be in the nature of a "fishing expedition".[8] The INS has failed to demonstrate that the instant subpoena is no broader than necessary to achieve its purpose.
 
 
 41
 Based on our research, we can find no reported decision in which the INS has attempted to issue a third-party group subpoena in connection with a general investigation of unnamed individuals on the suspicion that some of them may be undocumented aliens. Moreover, the INS has not brought to our attention any of its regulations that would govern the issuance of such a subpoena. As the Supreme Court has reasoned:
 
 
 42
 [A]uthority actually granted by Congress of course cannot evaporate through lack of administrative exercise. But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred.
 
 
 43
 Bunte Bros., 312 U.S. at 352, 61 S.Ct. at 582. Although an agency's interpretation of a statute it administers is entitled to substantial deference, Blum v. Bacon, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982), its interpretation is entitled to less weight when it represents an abrupt change from longstanding practice, see International Bhd. of Teamsters v. Daniel, 439 U.S. 551, 565-69, 99 S.Ct. 790, 799-801, 58 L.Ed.2d 808 (1979).
 
 V
 
 44
 Because we conclude that section 1225(a) does not authorize the INS to issue a blanket John Doe subpoena where the targets of a general investigation are unknown, we reverse the judgment of the district court and quash the subpoena.[9]
 
 
 45
 REVERSED.
 
 
 
 *
 Judge Alarcon was drawn to replace Judge Kennedy. He has read the briefs, and reviewed the record
 
 
 **
 The Honorable Leland C. Nielsen, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 FmHA and the Department of Agriculture are authorized to inspect and review the labor camp records for compliance with federal, state, and local laws and regulations. 7 C.F.R. Sec. 1930.122. According to Peters' brief, which the INS does not contest, FmHA had recently inspected the Walla Walla Housing Authority's farm labor project and found it in full compliance with the relevant laws and regulations
 
 
 [2]
 As to the fourth amendment objections, the district court found that under United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); and Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), neither the tenants nor the camp had a legitimate expectation of privacy in the files
 
 
 [3]
 In IRS law, " 'A "John Doe" summons is, in essence, a direction to a third party to surrender information concerning taxpayers whose identity is currently unknown to the IRS.' " Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 313 n. 4, 105 S.Ct. 725, 726 n. 4, 83 L.Ed.2d 678 (1985) (quoting In re Tax Liabilities of John Does, 671 F.2d 977, 978 (6th Cir.1982)); see also United States v. Samuels, Kramer and Co., 712 F.2d 1342, 1345 (9th Cir.1983). Similarly, we use the term "John Doe subpoenas" in this context to refer to third-party subpoenas, such as the one issued here, where the INS's investigation and request for information concerns individuals whose identity is currently unknown to the INS
 We note further that although the request for information in the IRS context is labeled a John Doe "summons," 26 U.S.C. Sec. 7609(f), it is for all intents and purposes actually a subpoena.
 
 
 [4]
 26 U.S.C. Sec. 7602(a) provides:
 (a) Authority to summon, etc.--For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized--
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
 
 
 [5]
 We note that Congress also addressed the problem of third-party summonses in cases where the IRS knows the identity of the taxpayer being investigated, as was allowed in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Congress enacted sections 7609(a) and (b), which require the IRS to give notice of the summons to the taxpayer and give the taxpayer the right "to intervene in any proceeding with respect to the enforcement of such summons." See generally Tiffany Fine Arts, 469 U.S. at 314-17, 105 S.Ct. at 727-28
 
 
 [6]
 Congress also limited the category of what was defined as a "third-party record keeper." 26 U.S.C. Sec. 7609(a)(3); see also H.R.Conf.Rep. No. 1515, 94th Cong., 2d Sess. 486 (1976), 1976 U.S.Code Cong. & Admin.News, p. 4190
 
 
 [7]
 We note that the legislative history of 8 U.S.C. Sec. 1225 is unhelpful in ascertaining the exact perimeters of the INS' subpoena power. See 1952 U.S.Code Cong. & Admin.News, 1653, 1709-10
 
 
 [8]
 Contrary to the INS's argument, Peters and the tenants have not waived this argument. In her motion to quash, Peters argued that the subpoena was, inter alia, "overbroad."
 
 
 [9]
 Because we hold that the INS was without authority to issue the instant subpoena, we need not reach the fourth amendment issue
 Although not in effect during all relevant times herein, we observe that Congress has set forth specific procedures to verify alien eligibility for public benefits, which INS agent Bowers first asserted was the purpose of his investigation. See Immigration Reform and Control Act of 1986, Sec. 121, Pub.L. No. 99-603, 100 Stat. 3359, 3384 (known as Systematic Alien Verification for Entitlements or SAVE).