**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 5/23/96**

**TENTH CIRCUIT**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | No. 95-2050 |
| ) | |
| HILMAN C. MOFFETT, also known as ) | |
| Jamil Moffett, ) | |
| ) | |
| Defendant-Appellant. ) | |

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-94-18-LH)

---

Richard A. Winterbottom of Stout & Winterbottom, Albuquerque, New Mexico, for Defendant-Appellant.

Robert D. Kimball, Assistant U.S. Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before MOORE and LOGAN, Circuit Judges, and O'CONNOR,* District Judge.

---

* The Honorable Earl E. O'Connor, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation.

LOGAN, Circuit Judge.

_____

Defendant Hilman C. Moffett appeals his conviction on one count of possessing with intent to distribute more than fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. Defendant asserts that the district court erred (1) in denying his motion to suppress evidence seized as a result of an administrative subpoena issued under 21 U.S.C. § 876; and (2) in allowing the government to take inconsistent positions by first arguing that defendant had abandoned three suitcases containing marijuana (thus allowing the government to seize them) and then linking defendant to the suitcases.

I

This case essentially began when Drug Enforcement Agency (DEA) Agent Samuel Candelaria obtained an administrative subpoena commanding Amtrak to produce passenger lists and reservations for certain trains stopping in Albuquerque, New Mexico during December 1993. Candelaria reviewed the reservation information looking for passengers who paid cash, booked sleeping cars, and purchased tickets on the day of departure, all of which in his experience suggested possible drug trafficking. One of the reservations indicated that defendant (under the name "J. Moffett") had booked a sleeper compartment for two on December 16 for a trip leaving that day from Los Angeles to New York and had

2

paid in cash. When Candelaria tried the callback number given for the reservation he got an answering machine which did not identify the person being called.

Based on this information DEA task force officer Jeanette Tate approached defendant's compartment when the train arrived at Albuquerque early in the afternoon of December 17. Defendant came out of the compartment to speak with Tate. Defendant and his stepdaughter, Angela Dean, voluntarily allowed Tate to check for drugs in the baggage they had in their compartment. Finding no contraband in the bags in the roomette, Tate rejoined Candelaria.

Meanwhile Candelaria had spoken with the car attendant, who told him that defendant brought three heavy suitcases on the train and placed them together on the top rack of the common luggage area. Because defendant had told Tate he had not checked any bags, Tate returned to talk again with defendant. Defendant agreed to look at the common luggage rack. Before being asked any questions he looked directly at the three bags. Defendant denied ownership or interest in the bags; he said that he had helped an elderly woman carry them onto the train. The officers then took the bags--which apparently had no identification tags-- off the train as abandoned property; the train carrying defendant continued on its way.

The officers took the bags to the Albuquerque DEA office and found that they contained 162 pounds of baled marijuana. The officers then called ahead and asked the New Mexico state police to send officers to meet the train at its next stop in Lamy, New Mexico. Two state police officers detained defendant and Dean so that the DEA officers could arrest

them. The officers took the roomette's trash bag with them. The trash bag contained a soda can with a key inside that fit two of the three bags the DEA officers had taken off the train in Albuquerque.

Defendant was charged with possession of marijuana with intent to distribute. Denying defendant's suppression motion, the district court found defendant had no standing to challenge the administrative subpoena issued under 21 U.S.C. § 876. After defendant's first trial ended in a mistrial, he was tried again and convicted.

## II

Defendant first argues that the district court erred in denying his motion to suppress. We review the court's findings of fact on a motion to suppress for clear error but its application of law de novo. See United States v. Garcia, 42 F.3d 604, 605 (10th Cir. 1994), cert. denied, 115 S. Ct. 1713 (1995). Defendant asserts that the district court erred in denying him standing to challenge the Attorney General's authority to issue a prospective "John Doe" subpoena under 21 U.S.C. § 876, and argues that the remedy for the allegedly invalid subpoena is suppression of all evidence gained through its use.

The statute at issue, 21 U.S.C. § 876(a), provides in relevant part:

**§ 876. Subpoenas**
**(a) Authorization of use by Attorney General**
　　In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things

which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

The right (or standing) to contest the constitutionality of a search and to argue for exclusion at a criminal trial of evidence obtained as a result of the search is subsumed under substantive Fourth Amendment doctrine. Rakas v. Illinois, 439 U.S. 128, 139-40 (1978). "[I]t is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protection." Id. at 134. The capacity to claim the Fourth Amendment's protection depends on whether the person claiming it has a "legitimate expectation of privacy in the invaded place." Id. at 143.

In the instant case defendant admits he has no reasonable expectation of privacy in the information on the train manifest--a business record of Amtrak. Thus, he does not purport to make any Fourth Amendment or other constitutional argument. Rather he argues more broadly that he has Article III case or controversy standing to challenge the statutory authority of the Attorney General to issue subpoenas under 21 U.S.C. § 876(a). The cases he relies on for this proposition are clearly distinguishable. In Peters v. United States, 853 F.2d 692 (9th Cir. 1988), an administrative subpoena issued by the Immigration and Naturalization Service (INS) under 8 U.S.C. § 1225(a) was challenged by the person against whom it was directed, the manager of the camp which the INS thought might house undocumented aliens. In United States v. Bisceglia, 420 U.S. 141 (1975), the John Doe summons that the Internal Revenue Service (IRS) issued under 26 U.S.C. § 7602 was challenged by the bank vice-president to whom it was directed. In the case before us Amtrak,

5

to which the summons was issued, would have had standing to make the statutory construction arguments defendant asserts; but it chose to comply with the subpoena.

Defendant must show not only that he suffered actual personal injury traceable to the challenged action but that he is in the zone of interest the statute is meant to protect. See Mount Evans Co. v. Madigan, 14 F.3d 1444, 1450-51. (10th Cir. 1994). The statute at issue before us is written to give the DEA broad powers to investigate violations of federal drug laws. The statute provides no express right to challenge the Attorney General's subpoenas issued under it. Cf. 26 U.S.C. § 7609 (requiring notice and giving a right to intervene to person whose business records are subpoenaed by the IRS). In analogous circumstances the courts have denied attempted challenges without adjudicating the merits of the claimed statutory violation. See, e.g., United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) (Absent presence or proprietary interest in house searched defendant had no standing to challenge knock-and-announce statute because he was not a "member of the class of persons sought to be protected by the statute."); United States v. Thompson, 936 F.2d 1249, 1251-52 (11th Cir. 1991) (evidence obtained allegedly in violation of pen register statute admissible because the statute does not provide the remedy of exclusion), cert. denied, 502 U.S. 1075 (1992). We agree with those cases.

Our supervisory power does not authorize us to order suppression of "otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court." United States v. Payner, 447 U.S. 727, 735 (1980). Thus, we do not reach the

6

statutory construction issue defendant presses: whether the DEA had authority to issue a prospective subpoena as Bisceglia permitted with respect to a subpoena issued under an internal revenue statute, or whether it had to request existent records for an identified suspect as Peters held necessary with respect to a subpoena issued under an immigration act.

III

Defendant also complains that the government took inconsistent positions in both seizing and searching the suitcases as abandoned and then charging him with possession of the marijuana found in those suitcases. There is no merit to this argument. The government introduced evidence that defendant placed the suitcases on the train and then conveniently abandoned them when they became the object of the agents' investigation. See United States v. Salvucci, 448 U.S. 83, 90 (1980) ("[A] prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction."); Zermeno, 66 F.3d at 1061 (not inconsistent for government to argue defendant frequented house where drugs were stored but also to assert he lacks standing to challenge search of premises). Defendant's reliance upon United States v. Morales, 737 F.2d 761, 763-64 (8th Cir. 1984), is misplaced. There the Eighth Circuit rejected the government's attack on defendant's standing to challenge the search of a hotel room in part because the government changed its position from the trial to the appeal.

AFFIRMED.