**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Petitioner-Appellee,*

v.

GOLDEN VALLEY ELECTRIC
ASSOCIATION,
        *Respondent-Appellant.*

No. 11-35195

D.C. No.
3:11-mc-00002-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
June 28, 2012—Fairbanks, Alaska

Filed August 7, 2012

Before: Alfred T. Goodwin, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Frank V. Russo, OFFICE OF THE UNITED STATES ATTORNEY, Anchorage, Alaska, for the appellee.

Michael C. Kramer, Joseph W. Evans, BORGESON & KRAMER, Fairbanks, Alaska, for the appellant.

## OPINION

W. FLETCHER, Circuit Judge:

The United States petitioned the district court for an order enforcing a Drug Enforcement Administration ("DEA") subpoena served on Golden Valley Electric Association ("Golden Valley") for power consumption records concerning three customer residences. The court granted the petition and ordered compliance. Golden Valley complied with the subpoena but appealed the order. We hold that the appeal is not moot and affirm on the merits.

## I.   Background

Golden Valley is a member-owned cooperative providing electricity to roughly 44,000 meters in Fairbanks and other localities in the interior of Alaska. In late 2010, the DEA was investigating suspected violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, by several of Golden Valley's customers. As part of its investigation, the DEA served an administrative subpoena on Golden Valley pursuant to 21 U.S.C. § 876(a). The subpoena ordered Golden Valley to provide company records pertaining to electricity consumption at three specified customer addresses. The records subpoenaed were:

> customer information including full name, address, telephone number, and any account information for customer; method of payment (credit card, debit card, cash, check) with card number and account information; to include power consumption records and date(s) service was initiated and terminated for the period 10-01-2009 through 12-14-2010, if applicable[.]

Golden Valley did not immediately comply with the subpoena.

The government petitioned the district court pursuant to § 876(c) for an order enforcing its subpoena. Golden Valley opposed the petition, primarily relying on a company policy of protecting the confidentiality of its members' records. The district court granted the petition to enforce the subpoena.

Golden Valley timely appealed the district court's order. It has now complied with the subpoena, but it has not dismissed its appeal.

## II.   Standard of Review

We review de novo an appeal from an order enforcing an administrative subpoena. *EEOC v. Fed. Express Corp.*, 558

F.3d 842, 846 (9th Cir. 2009). We review a question of mootness de novo. *Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012).

### III.    Discussion

### A.    Mootness

**[1]** As a preliminary matter, we must decide whether Golden Valley's compliance with the district court's order has rendered its appeal moot. Neither party has raised the issue, but we have an independent duty to decide whether an appeal is moot within the meaning of the case or controversy requirement of Article III. *See Renee v. Duncan*, ___ F.3d ___, 2012 WL 1624772, at *13 (9th Cir. May 10, 2012).

An Article III federal court has "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union*, 132 S. Ct. 2277, 2287 (2012) (internal quotation marks omitted). A case is not moot "as long as the parties have a concrete interest, however small, in the outcome of the litigation[.]" *Id.* (internal quotation marks and alteration omitted).

**[2]** In *Church of Scientology,* the Supreme Court addressed the very issue before us — whether compliance with a district court's order enforcing a subpoena moots an appeal from that order. The Internal Revenue Service ("IRS") had obtained an order enforcing a subpoena requiring the production of state-court records. 506 U.S. at 11. While the order was on appeal, copies of the records were delivered to the IRS. *Id.* We dismissed the appeal as moot. *Id.* at 12. The Supreme Court

reversed, concluding that the appeal was not moot. It explained:

> While a court may not be able to return the parties to the *status quo ante* — there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes — a court can fashion *some* form of meaningful relief in circumstances such as these. Taxpayers have an obvious possessory interest in their records. When the Government has obtained such materials as a result of an unlawful [subpoena], that interest is violated and a court can effectuate relief by ordering the Government to return the records.

*Id.* at 12-13.

Prior to the Supreme Court's decision in *Church of Scientology*, we had held in several cases that an appeal was moot if the subpoenaed party had complied with an enforcement order. *See, e.g., Remark v. United States*, 979 F.2d 770, 771 n.1 (9th Cir. 1992); *EEOC v. St. Regis Paper Co.*, 717 F.2d 1302, 1303 (9th Cir. 1983); *United States v. Silva & Silva Accountancy Corp.*, 641 F.2d 710, 711 (9th Cir. 1981); *SEC v. Laird*, 598 F.2d 1162, 1163 (9th Cir. 1979). As a three-judge panel, we must follow prior decisions of our court unless "intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). "[T]he issues decided by the higher court need not be identical in order to be controlling." *Id.* But the intervening Supreme Court precedent must "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.*

**[3]** We have previously recognized that *Church of Scientology* is controlling on this issue. *See United States v. Rubin*, 2 F.3d 974, 976 (9th Cir. 1993). We take this opportunity to

further clarify our case law. We conclude that the Supreme Court's decision in *Church of Scientology* is "clearly irreconcilable" with our prior decisions listed above. *See Remark*, 979 F.2d at 771 n.1; *St. Regis Paper Co.*, 717 F.2d at 1303; *Silva*, 641 F.2d at 711; *Laird*, 598 F.2d at 1163. The fact that these cases arose under different federal statutes does not distinguish them from *Church of Scientology*. *Church of Scientology*, 506 U.S. at 17 (relying on "earlier cases involving other statutes" to hold the appeal not moot).

**[4]** Accordingly, we hold that Golden Valley's appeal is not moot despite Golden Valley's compliance with the district court's order.

## B.   Merits

**[5]** Congress enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970, *inter alia*, to "strengthen law enforcement tools against the traffic of illicit drugs." *Gonzales v. Raich*, 545 U.S. 1, 10 (2005). The statute gives the Attorney General the authority to issue administrative subpoenas to investigate drug crimes:

> In any investigation relating to his functions under this subchapter [Subchapter I — Control and Enforcement] with respect to controlled substances . . . the Attorney General may subp[o]ena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

21 U.S.C. § 876(a). Section 876(c) provides for judicial enforcement of a subpoena issued under § 876(a): "In the case of contumacy by or refusal to obey a subp[o]ena issued to any person, the Attorney General may invoke the aid of any court

of the United States within the jurisdiction of which the investigation is carried on . . . to compel compliance with the subp[o]ena."

**[6]** An administrative subpoena may not be "too indefinite or broad." *Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988). "The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994). Even if other criteria are satisfied, "a Fourth Amendment 'reasonableness' inquiry must also be satisfied." *See Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444 n.5 (9th Cir. 1994). The scope of judicial review in an administrative subpoena enforcement proceeding is "quite narrow." *Children's Hosp. Med. Ctr.*, 719 F.2d at 1428.

Golden Valley makes four principal arguments on appeal. First, it argues that the subpoenaed records are irrelevant to the DEA's investigation. Second, it argues that the Attorney General did not verify the existence of a pending drug investigation involving the three residences prior to issuing the subpoena. Third, it argues that the subpoena was an overly broad "John Doe" subpoena. Fourth, it argues that issuance of the subpoena violated the Fourth Amendment because the government should have obtained a search warrant or a grand jury subpoena. We take each argument in turn.

### 1.  Relevance

"Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *Fed. Express Corp.*, 558 F.3d at 854. The relevance requirement is "not especially constraining." *Id.* (internal quotation marks omitted). We "must enforce administrative subpoenas unless the

evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (internal quotation marks and alteration omitted).

A DEA agent filed an affidavit in the district court stating that the subpoenaed records were relevant to determine whether individuals at three residences were involved in the manufacture and distribution of controlled substances. Golden Valley acknowledges that electricity consumption can indicate whether a person is growing marijuana because "grow lamps necessitat[e] a large amount of electricity." However, relying on *Carter v. State*, 910 P.2d 619, 625-26 (Alaska Ct. App. 1996), Golden Valley argues that fluctuating energy consumption is "not unusual" in Alaska and so "not obviously relevant" to a drug crime.

**[7]** The information subpoenaed does not need to be relevant to a crime; in fact, it may be used to dissipate any suspicion of a crime. The information subpoenaed need only be relevant to an agency investigation. *Fed. Express Corp.*, 558 F.3d at 854. Energy consumption records can be relevant to an investigation into a suspected drug crime. For example, in *United States v. Real Property in Santa Paula, Cal.*, 763 F. Supp. 2d 1175 (C.D. Cal. 2011), a private residence suspected of an indoor marijuana growing operation spent between $251 and $687 per month on electricity compared to a neighborhood average of between $78 and $95 per month. *Id.* 1179-80 & n.39. The limited record before us nowhere indicates the degree of fluctuation in electricity consumption that may be common in Alaska. But seasonal or other fluctuations are not the only thing that matters to a drug crime investigation. What primarily matters is the amount of electricity usage relative to that of other residences in the vicinity. We easily conclude that power consumption records at the three customer residences satisfy the relevance standard for the issuance of an administrative subpoena in a drug investigation.

**[8]** Golden Valley argues further that the information relating to individual customers at the three residences — such as names, addresses, telephone numbers, account information, as well as credit or debit card and checking information — is not relevant to the DEA's investigation. We do not agree. This information may or may not turn out to be incriminating, but it is clearly relevant to an investigation of a possible violation of the drug laws. It may, among other things, identify possible suspects with control over the premises. *See, e.g.*, *United States v. Crozier*, 777 F.2d 1376, 1380 (9th Cir. 1985) (noting that we have upheld search warrants "authorizing the seizure of items which indicate ownership or control of the premises," including utility bills).

## 2.    Procedural Requirements

**[9]** Section 876(a) requires that "the Attorney General find[ ] [the records] relevant or material to the investigation" prior to issuing a subpoena. 21 U.S.C. § 876(a). Golden Valley contends that the "Attorney General has not even verified that there is a current drug investigation involving these residences." The record belies Golden Valley's contention. A DEA supervisor signed and issued the administrative subpoena directed to Golden Valley, and a DEA agent served the subpoena. The Attorney General has delegated his authority under § 876 to DEA agents. *See* 21 U.S.C. § 871(a) ("The Attorney General may delegate any of his functions under this subchapter to any officer or employee of the Department of Justice."); 28 C.F.R. § 0.104 app.

## 3.    Overly Broad Subpoena

We have quashed a "John Doe" administrative subpoena as overly broad where the governing statute did not authorize the agency's use of group subpoenas. *See Peters*, 853 F.2d at 700. A "John Doe" subpoena is one "where the [agency's] investigation and request for information concerns individuals whose identity is currently unknown to the [agency]." *Id.* at

695 n.3. In *Peters*, the Immigration and Naturalization Service had served a "John Doe" subpoena on the manager of a labor camp with 150 resident families, seeking records related to any unnamed "undocumented aliens" living there. *Id.* at 694. We quashed the subpoena, holding that the Immigration and Naturalization Act does not authorize the agency to serve "John Doe" subpoenas. *Id.* at 699-700.

**[10]** Golden Valley argues under *Peters* that the subpoena in this case seeking records for the residences of three customers is an impermissible "group subpoena." We disagree. Unlike the broad and indefinite subpoena in *Peters*, the subpoena in this case is narrow and specific. A DEA agent stated in a declaration in the district court, "I suspect that individuals at these residences may be involved in the manufacture and distribution of controlled substances." The subpoena requests information related to customer information at only these specified residences.

### 4.    Fourth Amendment

**[11]** "[I]n the context of an administrative [subpoena], the Fourth Amendment's restrictions are limited." *Mont. Sulphur*, 32 F.3d at 448. We have described the scope of protection:

> [I]t is sufficient [for Fourth Amendment purposes] if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.

*Id.* (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)) (internal quotation marks omitted; alterations in original). An administrative subpoena is consistent with the Fourth Amendment if "the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry." *Okla. Press Publ'g Co. v.*

*Walling*, 327 U.S. 186, 209 (1946). "Beyond this[,] the requirement of reasonableness . . . comes down to [whether] specification of the documents to be produced [is] adequate, but not excessive, for the purposes of the relevant inquiry." *Id.* A "subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Children's Hosp.*, 719 F.2d at 1428 (citing *Okla. Press*, 327 U.S. at 217; *Morton Salt Co.*, 338 U.S. at 653).

Golden Valley contends that the Government should have to meet a higher standard than that just described. Golden Valley notes that the government normally obtains evidence in a criminal investigation through a search warrant, which requires probable cause and prior judicial review, or a grand jury subpoena, which requires the presentation of evidence and grand jury approval.

**[12]** The Supreme Court has refused to require that an agency have probable cause to justify issuance of a subpoena. *See United States v. Powell*, 379 U.S. 48, 57 (1964) (citing the "general rejection of probable cause requirements in [administrative subpoenas] involving other agencies"); *Okla. Press*, 327 U.S. at 215-16 (rejecting probable cause requirement in agency subpoena context). Further, nothing in existing case law requires the Attorney General to use a grand jury subpoena rather than an administrative subpoena. Grand jury and administrative subpoenas function in similar ways. The Court wrote in *Oklahoma Press* that an administrator's "investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's . . . and is governed by the same limitations." 327 U.S. at 216; *see also Morton Salt*, 338 U.S. at 642 (an administrator's "power of inquisition" "is more analogous to the Grand Jury, which . . . can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."). Neither type of subpoena is self-enforcing. *See United States v. Williams*, 504 U.S. 36, 48

(1992) (grand jury subpoena); *Mont. Sulphur*, 32 F.3d at 444 (administrative subpoena). If the subpoenaed party fails to comply, the government must seek a court order compelling compliance. *See* 21 U.S.C. § 876(c); *Williams*, 504 U.S. at 48. The court will review both grand jury and administrative subpoenas for compliance with the appropriate standard before issuing an enforcement order. *Williams*, 504 U.S. at 48; *Mont. Sulphur*, 32 F.3d at 444.

**[13]** Golden Valley contends that it may assert its customers' Fourth Amendment privacy rights. Even assuming that it can do so, this would not change the analysis here. A customer ordinarily lacks "a reasonable expectation of privacy in an item," like a business record, "in which he has no possessory or ownership interest." *United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000) (motel registration records); *see also United States v. Miller*, 425 U.S. 435, 440 (1976) (bank records); *United States v. Hamilton*, 434 F. Supp. 2d 974, 979-80 (D. Or. 2006) (electricity consumption records). The records sought here are business records owned and possessed by Golden Valley.

**[14]** Golden Valley also relies on a company policy of protecting the privacy of its members. Depending on the circumstances or the type of information, a company's guarantee to its customers that it will safeguard the privacy of their records might suffice to justify resisting an administrative subpoena. However, Golden Valley has not shown the existence of any agreement with its customers to keep their usage and payment records confidential. Further, the Court in *Miller* carefully explained that the nature of the subpoenaed bank records gave the bank's customers little reason to expect that they would be kept confidential from the government. The Court wrote:

> Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually received and obtained by means of the subpoena, we perceive no legitimate "expecta-

tion of privacy" in their contents. The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.

425 U.S. at 442. Golden Valley's business records are no more inherently personal or private than the bank records in *Miller*. *But see Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683-84 (N.D. Cal. 2006) (noting the personal nature of Google search queries).

## Conclusion

**[15]** We hold that Golden Valley's compliance with the district court's enforcement order does not moot the appeal. On the merits, we hold that the DEA's subpoena sought information relevant to a drug investigation, was procedurally proper, and was not overly broad. Finally, we hold that the subpoena complies with the Fourth Amendment.

AFFIRMED.