Steven L. GRIFFIN, individually and as next friend for Angie Griffin, a minor, Plaintiff–Appellant,

and

Dorothy Griffin, individually and as next friend for Angie Griffin, a minor, Plaintiff,

v.

James R. STRONG, Dennis Gale, and John Does I–V, individually and in their official capacities, Defendants–Appellees.

No. 92–4032.

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1993.

Steve Russell and Kathryn Collard, of Collard & Russell, Salt Lake City, UT, for plaintiff-appellant.

David E. Yocom, Salt Lake County Atty., and Patricia J. Marlowe, Deputy County Atty., Salt Lake City, UT, for defendants-appellees.

Before McKAY, Chief Judge, SEYMOUR, and KELLY, Circuit Judges.

McKAY, Chief Judge.

This appeal reviews the district court's determination that, as a matter of law, statements used against plaintiff-appellant Steven L. Griffin in an earlier criminal proceeding were not coerced from him by de-

fendant-appellee James R. Strong. 739 F.Supp. 1496. Because we agree with plaintiff that the circumstances under which his statements were made precluded their voluntariness, we reverse the judgment of the district court.[1]

On February 15, 1986, plaintiff was arrested by defendant and charged with rape of a child. Statements were taken from plaintiff by defendant on February 15 and February 17, 1986. Both statements were used against plaintiff in his criminal trial. Plaintiff's conviction on two lesser charges was overturned by the Utah Court of Appeals, which found that the first statement was coerced and that the second statement was taken in violation of plaintiff's right to counsel. *State v. Griffin*, 754 P.2d 965, 971 (Utah Ct.App.1988). Plaintiff then brought this action against Mr. Strong under 42 U.S.C. § 1983 charging violation of his rights under the Fifth and Fourteenth Amendments.

Before trial, the court ruled that it would decide the issue of the voluntariness of plaintiff's statements as a matter of law. With respect to plaintiff's February 15th statement, the district court held that it did not constitute a coerced confession because plaintiff "did not confess during the [February 15th] interrogation and statements made by him at that time did not constitute a confession." Appellant's Br., Attach. D, Findings of Fact and Conclusions of Law at 1. With respect to the February 17th statement, the court submitted special interrogatories to the jury to decide disputed facts concerning circumstances surrounding the making of that statement. Despite the jury's findings that defendant had promised plaintiff lesser punishment in order to induce him to make a statement, and that defendant also promised to protect plaintiff's health and safety in order to induce his statement, the court held that plaintiff's confession was voluntary and not the product of coercion or intimidation. *Id.* at 2. At the request of both parties, the court certified its judgment under Rule

54(b), Fed.R.Civ.P., and this appeal followed.

■ The ultimate determination of whether a confession is voluntary is a question of law reviewable by this court de novo. *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). The factual predicates underlying that determination, however, are reviewed for clear error. *United States v. Chalan*, 812 F.2d 1302, 1307–08 (10th Cir.1987). The court's conclusion that the February 15th statement was not a "confession" is a conclusion of law which did not rely on jury input. The disputed facts regarding the circumstances surrounding the February 17th statement, however, were resolved by the jury in answer to the special interrogatories. The court then considered those answers in arriving at its legal conclusion regarding that later statement.

■ The district court made no factual finding regarding the voluntariness of plaintiff's February 15th statement. Our review of the record, however, persuades us that the February 15th statement was involuntary as a matter of law. The record here contains a transcript of the February 15th interrogation. During that interrogation, the following exchange took place after defendant Strong had urged plaintiff to confess:

Q. [L]ike I told you before, you're gonna be ... away from your daughter for a while. Do you understand that? (Strong)

A. (No verbal response from Steven)

Q. Steven? (Strong)

A. I didn't do it! (Steven)

Q. Okay, I'm asking you if you understand ... what I'm saying ... that you're gonna be away from your daughter for a while ... do you understand that? (Strong)

A. No, I don't. (Steven)

Q. Okay, well, you are going to be away from your daughter for a while.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Cause I ... believe the children. And ... in order for you to ever ... have a relationship with your daughter again ... then you're going to need to get some ... extensive help ... and ... after that time, and only after that time ... uh ... would it be possible for you to be reunited with your daughter again. And in order for you to ... receive any help for the problem, you're going to have to admit there's a problem. (Strong)

A. I'd kill myself before I would do any of this shit ... and I mean it. (Steven)

Q. (Pause).... You would rather kill yourself than ... if you say you're innocent then [sic] stand up for rights? (Strong)

A. Well, the way you say I can't see my daughter anymore ... there's no use living is there? (Steven)

Appellant's App., Doc. J at 8 (ellipses in original).

As a result of this improper manner of interrogation, the following dialog occurred:

A. Oh ... so if I admit to anything they say I did ... then I have ... then that would be the best to do. (Steven)

Q. That would be the best to do. (Strong)

A. Okay. I admit to everything; I done everything ... all right? I did it all. (Steven)

Q. What did you do? (Strong)

A. Uh, let's see ... what was it? (Steven)

Q. You tell me. (Strong)

A. Let's see, you said I had intercourse with Camie ... okay, I did that.

*Id.* at 15–16 (ellipses in original).

▮ To be admissable, a confession must be made freely and voluntarily; it must not be extracted by threats in violation of due process or obtained by compulsion or inducement of any sort. *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963). We hold as a matter of law that the type of interrogation used here, and the threats upon which it relied, was so coercive as to render plaintiff's statement involuntary. Plaintiff was clearly induced to talk when he otherwise would not have.

The district court's failure to determine the voluntariness of the February 15th statement apparently arose from its conclusion that the statement did not constitute a confession, implying that its use at plaintiff's criminal trial did not violate plaintiff's Fifth Amendment right against self-incrimination. While the sincerity of plaintiff's statements admitting guilt can be challenged given the context of the interrogation, limiting the scope of the Fifth Amendment protection to only those statements which can be characterized as "sincere confessions" is unduly restrictive.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The district court seems to have been of the view that the admission of a mere statement obtained under coercive circumstances would not implicate the protections of the Fifth Amendment, and that not until a statement or statements reach the status of a "confession" would the Fifth Amendment come into play. While we do not wish to engage in the semantic exercise of differentiating between a statement and a confession, or trying to determine when a statement somehow matures into a confession, we note that such endeavor is unnecessary.

▮ It is well established that the Fifth Amendment protects against the admission of incriminating statements of all kinds, whether considered to be confessions or not. "No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any matter; it does not distinguish degrees of incrimination." *Miranda v. Arizona,* 384 U.S. 436, 476, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). " 'The privilege afforded not only extends to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute....' " *Malloy v. Hogan,* 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653

(1964) (quoting *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). " '[T]he availability of the privilege . . . [turns] upon the nature of the statement or admission and the exposure it invites.' " *United States v. Rogers,* 921 F.2d 975, 979 (10th Cir.) (quoting *In re Gault,* 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967)), *cert. denied,* 498 U.S. 839, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990); *see also Cooper v. Dupnik,* 963 F.2d 1220, 1236–38 (9th Cir.) (statements which could and probably would have been used against accused had he gone to trial in order to hinder any insanity defense were made in contravention of accused's right to remain silent), *cert. denied,* —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992). Our Fifth Amendment cases consistently refer to incriminating "statements," and are not limited to "confessions" per se. *See, e.g., Short,* 947 F.2d at 1449; *Rogers,* 921 F.2d at 979; *United States v. Fountain,* 776 F.2d 878, 885 (10th Cir.1985). The characterization of plaintiff's February 15th admission as a statement as opposed to a confession, therefore, did not insulate it from the protections afforded by the Fifth Amendment.

Turning now to the statement of February 17, the jury was asked to respond to the following interrogatories:

> During the course of the interrogation on February 17, 1986 in the jail, did defendant Strong make promises of lesser punishment to plaintiff Steven Griffin in order to induce him to make a statement?

and

> During the course of the interrogation on February 17, 1986 in the jail, did defendant Strong promise to assist plaintiff Steven Griffin to protect his health and safety in order to induce him to make a statement?

Appellant's Br., Attach. B, Special Interrogatories Nos. 5 & 6. The jury answered both of these questions in the affirmative. *Id.*

These underlying findings of fact are reviewed to determine whether the jury's conclusion is supported by substantial evidence. *Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987).

"The jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Id.* Here the jury heard evidence that, immediately prior to taking plaintiff's February 17th statement, defendant told plaintiff that he, the defendant, would inform other inmates in the jail of the nature of the charges against plaintiff and that "they'd come down and smash [plaintiff's] guts all over the floor like [defendant] had seen before." Appellant's App., Doc. U at 2–62. Plaintiff also testified that defendant said, "you're going to have to confess to these things, and I'll have you moved over to the mental health wing. It's safe over there[,] is guarded a lot, and it will be a nice area; but you have to cooperate with me before I'll cooperate with you." *Id.*

 The central consideration in determining whether a confession has been coerced "always involves this question: did the governmental conduct complained of 'bring about' a confession 'not freely self-determined?' " *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 348, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)). "Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment. . . ." *Short,* 947 F.2d at 1449 (citing *Malloy,* 378 U.S. at 7, 84 S.Ct. at 1493); *see also Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) (coercive police activity required before finding that a confession is involuntary within the context of the Due Process Clause of the Fourteenth Amendment). Where a promise of leniency has been made in exchange for a statement, " 'an inculpatory statement would be the product of inducement, and thus not an act of free will.' " *Fountain,* 776 F.2d at 885 (quoting *Shotwell,* 371 U.S. at 348, 83 S.Ct. at 454). By finding that promises of lesser punishment and physical protection were made to plaintiff in order to induce his statement, the jury found a predicate fact

underlying the ultimate and necessary legal conclusion that plaintiff's confession was involuntary.[2] The district court's application of these facts to the law to reach the opposite conclusion was, therefore, error.

Plaintiff, in his brief, also argues that the court erred in instructing the jury regarding the damages recoverable against defendant. This issue was not included in the order certified under Rule 54(b) for appeal to this court, and, thus is not before us.

The judgment of the United States District Court for the District of Utah is REVERSED, and this case is REMANDED for proceedings consistent with this order and judgment.

---

**2.** In determining whether a confession is involuntary, all of the surrounding circumstances must be considered. *Short,* 947 F.2d at 1449. This case involves two closely related interrogations. The coercive tactics and threats used by defendant during the course of the February 15th interrogation must also be taken into account when evaluating the voluntariness of the February 17th statement. The nature of the coercion which took place on February 15th cannot have failed to influence plaintiff's will two days later when he again was faced with defendant Strong's threats and again made incriminating statements.