**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CAROLYN CLANTON,

      Plaintiff-Appellee,

v.

JODY COOPER,

      Defendant-Appellant.

No. 96-7082

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. CIV-95-426-B)**

---

Charles K. Babb, Assistant Attorney General of Oklahoma, Oklahoma City, OK, argued the cause for the appellant. W.A. Drew Edmondson, Attorney General of Oklahoma, and Benjamin Gore Gaines, Assistant Attorney General of Oklahoma, assisted on the brief.

Gene V. Primomo, Wilcoxen, Wilcoxen, & Primomo, Muskogee, OK, argued the cause for the appellee. John H. Helm, Houston, TX, assisted on the brief.

---

Before **BRORBY, HOLLOWAY**, and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Plaintiff-Appellee Carolyn Clanton ("Clanton") was arrested for arson,

pursuant to a warrant issued by Defendant-Appellant Jody Cooper ("Cooper"), an

Oklahoma Fire Marshal Agent. The warrant was predicated on an oral statement made by Clanton's alleged accomplice, who later testified that his statement was coerced by Cooper. In addition, after Clanton was arrested, Cooper falsely told the arresting officers that Clanton was "possibly involved in a homicide still under investigation," and that Clanton was not eligible for bail, causing Clanton to be imprisoned overnight. The arrest warrant was later quashed by a state court. No charges were ever filed against Clanton.

Clanton then sued Cooper under 42 U.S.C. § 1983 (1994 & Supp. 1997), alleging that Cooper deprived her of her liberty under color of state law, by causing her to be arrested without probable cause and by causing her to be falsely imprisoned following the arrest. Cooper's motion for summary judgment on the ground of qualified immunity was denied. Cooper now appeals.

**BACKGROUND**

Several important facts in the present case are disputed. The following statement of facts is set forth in the light most favorable to Plaintiff-Appellee Carolyn Clanton, the nonmovant for summary judgment. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). All reasonable inferences from the factual record have been drawn in favor of Clanton.

Around July 25, 1993, Carolyn Clanton, a Texas resident, arrived in the City of Checotah, in McIntosh County, Oklahoma, to attend her recently deceased

mother's funeral, and to participate in the disposition of the mother's estate. Clanton's mother had lived in a trailer house in Checotah owned by Clanton's brother, Joe Burns. Although Clanton's stepfather Odie Sheffield still lived in the trailer house, Burns had ordered Sheffield to remove himself and his belongings from the trailer house immediately following the mother's death. Burns intended to sell the trailer to another neighbor, Nadine Lawson.

That evening, several arguments ensued regarding the right to possession of the trailer house. Odie Sheffield's relatives said that if he couldn't live in the trailer they would burn it. By 11:30 p.m., the trailer had been emptied of possessions. At that time, Clanton and her nephew Michael Eaves ("Michael") returned to the trailer, where they found that water was running from the washer hookup, the lights were on, and the doors were wide open. Clanton then borrowed a wrench from Nadine Lawson to stop the running water, secured the premises, and left with Michael at about midnight. Clanton and Michael spent the next one-and-one-half hours together at the Green Country Diner.

At about 12:20 a.m., while Clanton and Michael were in the Diner, the trailer house was set on fire. Defendant-Appellant Jody Cooper, an Oklahoma State Fire Marshal Agent, investigated the fire the following morning. Cooper interviewed a number of witnesses, including Clanton, but did not solve the crime. While being interviewed by Agent Cooper, Clanton expressed

dissatisfaction with the course of Cooper's investigation. Clanton also told Cooper that she would be traveling in Europe and would not be returning to the United States until September, 1993.

In late August, 1993, the State Fire Marshal's office received a phone call from Clanton's nephew Bobby Eaves (Michael's brother). Bobby Eaves ("Bobby") claimed to have information about the July 26 arson, and agreed to meet with Agent Cooper on August 24, 1993. At this meeting, Bobby Eaves signed a written statement alleging that his brother Michael had told him that Michael and Clanton had committed the arson.

Two days later, Cooper visited Michael Eaves. At first, Michael denied any involvement in the arson. Cooper then falsely told Michael that physical evidence linked Michael to the crime, and that if Michael did not confess he would go to jail for twenty-five years. Cooper "suggested" that Michael had burned the house at Clanton's request, according to Clanton's plan, and with Clanton's assistance. He further "suggested" that Clanton's motive was to collect the fire insurance money. Finally, he told Michael that if Michael confessed along these lines, Michael would "get off lightly." Subsequently, Michael signed a <u>Miranda</u> waiver form and gave a tape-recorded oral statement in which he confessed to the arson and implicated his aunt, Carolyn Clanton.

Immediately after giving his oral statement, Michael was arrested for the arson. Several days later, on August 31, 1993, Cooper signed a probable cause affidavit in support of a warrant for Clanton's arrest. Although the district attorney had never filed a sworn information (and therefore no charges had been filed against Clanton), the arrest warrant was issued that same day. On September 2, 1993, Cooper disseminated the arrest warrant information nationally, through the National Crime Information Center (NCIC) computer system.

Around September 13, 1993, upon her return from Europe, Clanton was arrested by U.S. customs officers in Houston, Texas. She was then turned over to the Houston police. When the Houston police contacted the McIntosh County, Oklahoma Sheriff's Department to find out what to do with Clanton, they received the following message through the NCIC computer system.

> PLEASE PLACE A HOLD ON SUBJECT CAROLYN BURNS CLAYTON [sic] FOR THIS DEPT  SHE IS A WHITE FEMALE DOB/121051  HGT/504  WGT 130  EYES/BRO  HAI/BRO SKN/LGT  SHE IS CHARGED WITH ARSON OF RESIDENCE ENDANGERED LIFE AND POSSIBLY ENVOLVED [sic] IN A HOMICIDE STILL UNDER INVESTIGATION COURT WILL BE MCINTOSH CO COURT AT EUFAULA OK  WT NO IS AWF/93-6 DOW/083193  AND NO BOND  IF PERSON WONT WAIVE EXTRADITION WE WILL EXTRADITE

Clanton v. Cooper, No. CIV-95-426-B, slip op. at 8-9 (E.D. Okla. July 25, 1996) (Order) (Burrage, J.). Consequently, Clanton was incarcerated for one to three

days[1] in the Harris County (Texas) jail. She was released on an "Own Recognizance" bond only after the falsity of the "homicide" information was established.

On September 23, 1993, Michael Eaves recanted the oral statement which had been the sole evidence implicating Clanton in the arson. Michael alleged that Cooper had coerced him into making the earlier statement by threatening to send him to jail for twenty-five years unless he agreed to repeat back, in substance, a confession supplied by Cooper.[2]

On September 27, 1993, an Oklahoma trial court quashed the August 31, 1993 warrant for Clanton's arrest. The court cited two grounds for quashing the arrest: (1) no charges had ever been filed against Clanton by the D.A. (and no grand jury had indicted her); and (2) probable cause for Clanton's arrest could not be established solely by a recanted oral statement of an alleged co-conspirator.

---

[1]Clanton claims in her brief that her imprisonment lasted three days. Cooper claims in his brief that Clanton's imprisonment lasted only one day. Similarly, in the argumentative section of Clanton's brief, Clanton says that she was released on September 14, 1994, implying that she was incarcerated for only one day. Neither Cooper nor Clanton, however, cite to the record in support of their respective assessments of the number of days Clanton was imprisoned. Without any evidence to support either party's claim, we simply cannot resolve this conflict.

[2]An Oklahoma state judge, later ruling on Michael's motion to suppress his prior oral confession, found that the confession was given voluntarily. On September 28, 1994, Michael pled guilty to second degree arson, and was given a two-year suspended sentence.

To date, no charges have been filed against Clanton in connection with the July 26, 1993 arson.

On August 29, 1995, Clanton sued the City of Checotah, its police department and police chief, the Oklahoma State Fire Marshal's Office, its chief, and Agent Cooper under 42 U.S.C. § 1983 (1994) and under Oklahoma state law. The gravamen of Clanton's complaint was that the defendants had intentionally manufactured false evidence against Clanton (Michael Eaves's oral statement), and had intentionally made false statements about Clanton (that she was "possibly involved in a homicide still under investigation"), and that these intentional actions had caused Clanton's false arrest and subsequent imprisonment.

The district court exercised jurisdiction over Clanton's federal civil rights claims pursuant to 28 U.S.C. § 1331, 1343(a)(3) (1994), and over her pendent state law claims pursuant to 28 U.S.C. § 1367(a) (1994). All Clanton's claims against all defendants other than Cooper were subsequently dismissed, either voluntarily or by the district court. Cooper then moved for summary judgment on the remaining claims against him, primarily on the grounds of qualified immunity. Cooper argued that all of his actions were within the scope of his authority and that he did not violate any "clearly established" law. The district court granted Cooper's motion for summary judgment with respect to Clanton's state law claims, but denied it with respect to Clanton's federal Section 1983 claim.

Cooper now appeals the partial denial of his motion for summary judgment.

## DISCUSSION

### I. Jurisdiction

"Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law." Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997) (citing Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996), and Johnson v. Jones, 515 U.S. 304, 312-14 (1995)). More specifically:

> a district court's order denying a defendant's motion for summary judgment [is] an immediately appealable "collateral order" (*i.e.*, a "final decision") under Cohen [v. Beneficial Indus. Loan Corp, 337 U.S. 541 (1949)], where (1) the defendant [is] a public official asserting a defense of "qualified immunity" and (2) the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[] a violation of "clearly established" law.

Johnson v. Jones, 515 U.S. at 311 (citing Mitchell v. Forsyth, 472 U.S. 511, 528 (1985), and Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

To the extent that the district court's denial of the defendant's motion for summary judgment is predicated on "'evidence sufficiency,' *i.e.* which facts a party may, or may not, be able to prove at trial," the denial is not reviewable as a "collateral order". Id. at 313. Rather, "immunity appeals . . . [are] limited to

cases presenting neat abstract issues of law." Id. at 317[3] (quotation marks and

citation omitted).

This court has recently summarized the practical effect of the Supreme

Court's Behrens and Johnson decisions as follows:

> A determination that the law allegedly violated by the defendant was clearly established at the time of the challenged actions is an abstract issue of law that is immediately appealable. A determination that under either party's version of the facts the defendant violated clearly established law is also immediately appealable. See Behrens, at -, 116 S. Ct. at 842; Johnson at 312-14, 115 S. Ct. at 2156-57; Mitchell, 472 U.S. at 528, 105 S. Ct. at 2816-17. However, government officials cannot appeal pretrial denial of qualified immunity to the extent the district court's order decides nothing more than whether the evidence could support a finding that particular conduct occurred. See Behrens, at -, 116 S. Ct. at 842. An order denying qualified immunity on summary judgment is not appealable if it merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment. See Johnson, at 312-14 115 S. Ct. at 2156-57.

Foote v. Spiegel, 118 F.3d at 1422; see also Wilson v. Meeks, 98 F.3d 1247, 1251

(10th Cir. 1996) (surveying Tenth Circuit cases applying the rules announced in

Behrens and Johnson).

With these principles in mind, we proceed to review whether, under

Clanton's version of the facts, Cooper violated clearly established law. In making

---

[3]The Supreme Court in Johnson overruled the Tenth Circuit's prior line of cases, which had held that appellate jurisdiction is *always* available to review denials of qualified immunity claims. See Johnson v. Jones, 515 U.S. at 309 (overruling Austin v. Hamilton, 945 F.2d 1155, 1157, 1162-63 (10th Cir. 1991)).

this determination, we must scrupulously avoid second-guessing the district court's determinations regarding whether Clanton has presented *evidence* sufficient to survive summary judgment. See Foote, 118 F.3d at 1422. Rather, we review only whether Cooper's conduct, as alleged by Clanton, violated clearly established law. Id. On appeal, "we review the denial of qualified immunity *de novo*." Walter v. Morton, 33 F.3d 1240, 1242 (10th Cir. 1994) (citing Powell v. Gallentine, 992 F.2d 1088, 1090 (10th Cir. 1993)).

## II.

State government officials performing discretionary functions enjoy qualified immunity from liability under 42 U.S.C. § 1983. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Such immunity is "qualified" in that it does not obtain when otherwise immune officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995); Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir. 1991). The Tenth Circuit has set forth the following framework for analyzing the application of the qualified immunity defense to claims brought pursuant to 42 U.S.C. § 1983:

> In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions. Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Once a public official raises a qualified immunity defense, the plaintiff bears the burden of (1) coming

forward with sufficient facts to show that the defendant's conduct violated the law;  and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred.  Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988).

Gehl Group, 63 F.3d at 1533; accord Lawmaster v. Ward, -- F.3d --, No. 96-5028, 1997 WL 577708, at #4 (10th Cir. Sept. 5, 1997).

If the defendant's conduct as alleged by the plaintiff does not violate the law, we need not reach the issue of whether the law was clearly established. Gehl Group, 63 F.3d at 1533 (citing Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993)).  If, however, we are persuaded that the defendant's conduct violated the law, "the plaintiff must [also] show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." Lawmaster, No. 96-5028, 1997 WL 577708, at #4 (citing Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996)).  "While the plaintiff need not show that the specific action at issue has previously been held unlawful, the alleged unlawfulness must be 'apparent' in light of preexisting law."  Medina v. City and County of Denver, 960 F.2d 1493, 1497 (10th Cir. 1992) (quoting Hilliard, 930 F.2d at 1518). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (internal quote marks omitted).

In the present case, Clanton alleges that Agent Cooper violated her clearly established constitutional rights in three ways: (1) by knowingly including false information in a sworn affidavit in support of a warrant for Clanton's arrest; (2) by knowingly transmitting over the NCIC computer system the false information that Clanton was "possibly involved in a homicide" and was not entitled to bail; and (3) by coercing Michael Eaves into making a false confession which implicated Clanton. We now consider whether each of these instances of Cooper's alleged conduct, if proved, would violate clearly established law.

A.    The Arrest Warrant

In her complaint, Clanton alleged that "Agent Jody Cooper, with information he knew was false and unreliable, swore in an affidavit to untrue facts, thereby securing an arrest warrant for Carolyn Clanton." (Complaint at ¶ 15, Aplt.'s App. at 4). The complaint further elaborates that: (1) "[t]he arrest warrant for Carolyn Clanton was issued based solely on the affidavit of Agent Jody Cooper which cited the uncorroborated statements of an alleged co-conspirator"; (2) "[n]o underlying criminal charges were pending against Carolyn Clanton at the time Agent Jody Cooper secured the warrant for Ms. Clanton's arrest"; and (3) "[t]he arrest warrant for Carolyn Clanton was issued without the presentment, indictment, or information in violation of . . . the 5th Amendment of the United States Constitution." (Id. at 4-5). The district court found that these

allegations, if true, would constitute a violation of Clanton's clearly established constitutional rights. We agree.

It has long been clearly established that the Fourth Amendment's warrant requirement is violated when "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" if the false statement is necessary to a finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978); see also Kaul v. Stephan, 83 F.3d 1208, 1213 n.4 (10th Cir. 1996) ("A state officer is not automatically shielded from Section 1983 liability merely because a judicial officer approves a warrant.") (citing Malley v. Briggs, 475 U.S. 335, 344-46 (1986)). Under Franks, it is the deliberate falsity or reckless disregard "of the affiant, not of any nongovernmental informant" that is unconstitutional. Franks, 438 U.S. at 171. Thus, if Cooper relied in good faith on statements of Michael Eaves's that turned out to be false, there would be no Franks violation.

Here, however, Clanton has alleged that Cooper knowingly and intentionally swore to the veracity of Michael Eaves's confession, while knowing that confession to be false: a classic Franks violation. The district court found that there are triable issues of material fact as to whether Cooper in fact did so. Clanton's claim is clearly *legally* sufficient. Cooper argues that Clanton merely "alleged in a conclusory fashion that Cooper knew Michael Eaves' statements

- 13 -

were false, she came forward with no facts or factual allegations supporting that argument." However, the district court found there was a genuine dispute over material facts and that is the kind of ruling that we lack jurisdiction to review in an interlocutory appeal. Johnson v. Jones, 515 U.S. at 313. Thus, Cooper is not entitled to qualified immunity on this general issue.

Cooper is, however, entitled to qualified immunity on Clanton's three subsidiary claims pertaining to the arrest warrant. Contrary to Clanton's claim, the finding of probable cause necessary to support an arrest warrant *may* be predicated entirely on the confession of a self-confessed co-conspirator, without running afoul of the Constitution. See Fed. R. Crim. P. 4(b) ("The finding of probable cause may be based upon hearsay evidence in whole or in part."); see also Illinois v. Gates, 462 U.S. 213, 230-32 (1983) ("probable cause" is determined under a "practical, nontechnical" totality of the circumstances test that takes individual account of the veracity and the basis of knowledge of the persons supplying the hearsay information).[4] Here, the mere fact that Cooper relied entirely upon a hearsay statement from Michael Eaves would not violate Clanton's constitutional rights.

---

[4]Clanton also claims that such a statement may not support an arrest warrant under Oklahoma law. However, an action may not be maintained under 42 U.S.C. § 1983 for a state official's failure to adhere to state law. Baker v. McCollan, 443 U.S. 137, 146 (1979).

- 14 -

In addition, Clanton claims that an arrest warrant cannot be valid where charges have not yet been filed against the arrestee. However, the Fourth Amendment guarantees that "no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the . . . persons or things to be seized." U.S. Const. Amend. IV (emphasis added). The constitutional prerequisite for a valid warrant is thus "probable cause, supported by Oath or affirmation. . . . " Id. There is simply no additional requirement that charges must already have been filed before an arrest may issue.

In a related vein, Clanton claims that her Fifth Amendment rights were violated because a warrant was issued for her arrest despite the fact that she was never indicted. This claim largely overlaps with her Fourth Amendment claim, and must be rejected for the same reasons. To the extent that Clanton's Fifth Amendment claim does not merely restate her Fourth Amendment claim, we note that the Fifth Amendment right to grand jury indictment has never been "incorporated" via the Fourteenth Amendment as a substantive restriction on state criminal procedure, Branzburg v. Hayes, 408 U.S. 665, 688 n.25 (1972), and thus may not be the basis of a claim under 42 U.S.C. § 1983.

In short, Clanton has stated a legally cognizable Section 1983 claim to the extent that she has alleged that Cooper knowingly and intentionally swore to untrue facts in an affidavit to obtain Clanton's arrest warrant. Because the

district court found that there are triable issues of material fact as to the truth of this allegation, we lack jurisdiction to consider Cooper's interlocutory appeal on this issue. However, Clanton's subsidiary claims pertaining to the legality of the arrest warrant are not cognizable under 42 U.S.C. § 1983, and Cooper is therefore entitled to qualified immunity with respect to each of those claims.

## B. The NCIC Transmission

Clanton also claims that Cooper violated Clanton's constitutional rights after Clanton was arrested, by knowingly and intentionally transmitting false information to the Houston Police and thereby causing Clanton's post-arrest/ pre-bail detention to be extended. Specifically, Clanton claims that she could have been released shortly after being arrested if Cooper's teletype had not falsely informed the Houston police that Clanton had "ENDANGERED LIFE AND POSSIBLY ENVOLVED [sic] IN A HOMICIDE," and that Clanton was not eligible to be released on bond when, in fact, the warrant issued by the McIntosh County District Court had set Clanton's bond at $5,000.

This claim was not specifically stated in Clanton's complaint. For this reason, the district court expressed "reluctan[ce] to definitively address the validity of this claim." Clanton v. Cooper, slip op. at 9. Nonetheless, the court held that Cooper did not enjoy qualified immunity from this claim, finding that, "at the very least, a genuine issue of material fact exists with regard to the

circumstances surrounding the composing, authorizing, reviewing and transmitting of the teletype message concerning the warrant for Plaintiff's arrest, thereby precluding summary judgment." Id. The court apparently construed the NCIC claim to fall within the general claims stated in Clanton's complaint that Cooper violated Clanton's Fourth and Fourteenth Amendment rights against unreasonable seizures and against deprivations of liberty without due process of law.

Cooper responds that the transmission of his false statements over the NCIC computer system caused no injury to Clanton, because "it is clear in this case that Plaintiff was not arrested in Houston because of the allegedly false statements, but instead was arrested because of the Arrest Warrant for Plaintiff in connection with the crime of arson." In support of this defense, Cooper notes that "[t]he teletype itself states that Plaintiff was wanted for arson and does not state that she is charged with anything else, and gives the warrant number and gives the court the warrant was filed in." In circumstances such as the present ones, where no separate or additional detention or imprisonment is caused by a false NCIC statement, Cooper argues, such a statement cannot be said to have caused a deprivation of liberty or an unreasonable seizure. Finally, Cooper argues that his false statements caused Clanton no injury because Texas courts are not bound by Oklahoma bond settings, but rather are free to set bond as they see fit.

We cannot agree that Cooper's false statements knowingly transmitted through the NCIC, as a matter of law, could not have caused an injury to Clanton. While Cooper is correct that Clanton would have been arrested on the arson warrant with or without the false NCIC statements, there are certainly factual issues as to whether she would have been quickly released on bond but for the NCIC transmission. The warrant, after all, set bond at $5,000 and did not identify Clanton as especially dangerous or possibly homicidal. Under these circumstances, it is not unreasonable to infer that the NCIC transmission was the proximate cause of Clanton's extended incarceration at the Harris County jail.

The Fourteenth Amendment protects persons from being deprived of liberty without due process of law. Cooper's teletype allegedly caused Clanton to be needlessly incarcerated for one to three days, without due process of law. The teletype was literally dispatched "under color of state law." It is thus hard to imagine a more paradigmatic application of Section 1983 liability.

For this reason, we do not think that Clanton's failure to cite cases clearly establishing the unconstitutionality of knowingly transmitting false information over the NCIC computer system is fatal to her claim. The purpose of the requirement that the law be "clearly established" before its violation may waive qualified immunity is to insure that officials may reasonably anticipate when their actions might give rise to liability for damages. Lawmaster, No. 96-5028, 1997

WL 577708, at #8. "Consequently, it is the plaintiff's burden to establish the asserted right's contours are sufficiently clear such that a 'reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. at 635, 640 (1987)).

Ordinarily, to carry this burden, a plaintiff must establish that there is a Supreme Court or Tenth Circuit opinion on point, or that the clearly established weight of authority from other courts has held the law to be as the plaintiff maintains. Id. (citing Garramone v. Romo, 94 F.3d 1446, 1451 (10th Cir. 1996)). This test is not rigid, however. Rather:

> where the reasonableness inquiry necessarily turns on the cases' particular facts such that the reasonableness determination must be made on an ad hoc basis, we must allow some degree of generality in the contours of the constitutional right at issue. We would be placing an impracticable burden on plaintiffs if we required them to cite a factually identical case before determining they showed the law was 'clearly established' and cleared the qualified immunity hurdle. Thus, . . . we adopt the approach of requiring some but not precise factual correspondence in demanding that officials apply general, well-developed legal principles. . . . While qualified immunity was meant to protect officials performing discretionary duties, it [] should not present an insurmountable obstacle to plaintiffs seeking to vindicate their constitutional rights.

Id. at 9 (internal citations omitted).

In the present case, we think that the knowing transmission of false statements over the NCIC computer system, in order to cause unjustifiedly extended incarceration of a suspect, is sufficiently similar to the swearing

knowingly (or with reckless disregard of the truth) of false information in a warrant application, proscribed by <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), that a reasonable official would have known it to be illegal. We therefore hold that Cooper enjoyed no qualified immunity to engage in such activity.

### C. Coerced Confession

Clanton alleges that Cooper initially violated Clanton's constitutional rights by "coercing" a false confession from Michael Eaves which implicated Clanton. Specifically, Clanton claims that Michael Eaves's confession was coerced because: (1) Cooper falsely told Michael Eaves that physical evidence connected Michael to the crime; and (2) Cooper told Michael that he would get a twenty-five-year sentence if he didn't confess, but would "get off lightly" if he confessed to a pattern of events suggested by Cooper. If these facts, taken together, do not amount to "coercion" under clearly established law, then Cooper is entitled to qualified immunity. Before discussing the coercion issue, however, we must determine whether *Clanton* may contest the voluntariness of *Eaves*'s confession. We conclude that she may.

There are two types of constitutional protections that invoke exclusionary rules. In the first category, the exclusion of unconstitutionally obtained evidence is designed to protect the enjoyment of constitutional rights themselves. Thus, for example, the Fourth Amendment protects the right to privacy by prohibiting

officers from bursting into a home (lacking consent or exigent circumstances) and seizing evidence without a warrant; if the officers do so, the resulting evidence, though accurate, will be suppressed to discourage such unconstitutional actions. See, e.g., United States v. Moore, 91 F.3d 96 (10th Cir. 1996). In this category, only the victims of the unconstitutional conduct may challenge the unconstitutional nature of the officer's actions, because only their rights have been violated. See, e.g., United States v. Moffett, 84 F.3d 1291, 1293 (10th Cir. 1996) (citing Rakas v. Illinois, 439 U.S. 128, 139-40 (1978)).

In the second category, a constitutional violation may assist officers in gathering evidence, but the violation has both offended the Constitution and rendered the evidence unreliable. A coerced confession fits into this category. As stated by the Supreme Court in Jackson v. Denno, 378 U.S. 368, 385-86 (1964):

> It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the 'strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will,' Blackburn v. Alabama, 361 U.S. 199, 206-207, and because of the 'deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.' Spano v. New York, 360 U.S. 315, 320-321.

Consequently, because the evidence is unreliable and its use offends the Constitution, a person may challenge the government's use against him or her of a coerced confession given by another person. "Confessions wrung out of their makers may be less reliable than voluntary confessions, so that using one person's coerced confession at another's trial violates his rights under the due process clause." Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir. 1994). Further, "It is unthinkable that a statement obtained by torture or by other conduct belonging only in a police state should be admitted at the government's behest in order to bolster its case. . . . Yet methods offensive when used against an accused do not magically become any less so when exerted against a witness." LaFrance v. Bohlinger, 499 F.2d 29, 34 (1st Cir. 1974). See also United States v. Merkt, 764 F.2d 266, 274 (5th Cir. 1985); United States v. Chiavola, 744 F.2d 1271, 1273 (7th Cir. 1984); Bradford v. Johnson, 476 F.2d 66, 66 (6th Cir. 1973) (per curiam), aff'g 354 F. Supp. 1331 (E.D. Mich. 1972). Clanton may contest the voluntariness of Eaves's confession not based on any violation of his constitutional rights, but rather as a violation of her own Fourteenth Amendment right to due process.

Having established that Clanton has standing to contest the voluntariness of Eaves's confession, we consider whether Cooper is entitled to qualified immunity for his conduct in eliciting the confession. The Fifth Amendment provides that

"[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To be admissible, a confession must be made freely and voluntarily; it must not be extracted by threats in violation of due process or obtained by compulsion or inducement of any sort." Griffin v. Strong, 983 F.2d 1540, 1542 (10th Cir. 1993) (citing Haynes v. Washington, 373 U.S. 503, 513 (1963)). To determine whether a confession was made freely and voluntarily, the "totality of the circumstances" must be considered. Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991). In applying this test, we have explained that:

> The central consideration in determining whether a confession has been coerced always involves this question: did the governmental conduct complained of bring about a confession not freely self-determined? Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment.

Griffin, 983 F.2d at 1543 (internal citation, punctuation marks, and footnote omitted).

It is well-settled that a confession is not considered coerced merely because the police misrepresented to a suspect the strength of the evidence against him. As Professor LaFave explains:

> Although dictum in Miranda v. Arizona[, 384 U.S. 436 (1966),] was highly critical of [police trickery and deception], as a general matter it may be said that courts have not deemed such conduct sufficient by itself to make a confession involuntary. One type of trickery involves misrepresenting to the suspect the strength of the existing

- 23 -

case against him. . . . [L]ower courts have held confessions admissible when they were prompted by such misrepresentations as that the murder victim was still alive, that nonexistent witnesses have been found, that the murder weapon had been uncovered, that defendant's prints were found at the crime scene, and that an accomplice had confessed and implicated the defendant.

1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 6.2, at 446-47 (1984) (footnotes omitted) (citing Frazier v. Cupp, 394 U.S. 731 (1969), and lower court cases). Thus, Michael Eaves' confession was not coerced just because Cooper falsely told him that physical evidence connected him to the crime.

However, Cooper also told Michael that he would get a twenty-five-year sentence if he didn't confess, but would "get off lightly" if he confessed to a pattern of events suggested by Cooper. As Professor LaFave goes on to say following the above-quoted passage, "[c]ourts are much less likely to tolerate misrepresentations of law." Id.

Under Supreme Court and Tenth Circuit precedent, a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced. See Fulminante, 499 U.S. at 286-87 (confession coerced where informant threatened defendant with violence and promised defendant protection from inmate violence); Hutto v. Ross, 429 U.S. 28, 30 (1976) (per curiam) (confession declared not involuntary, notwithstanding a plea bargain, because it was not the

- 24 -

result of any direct or implied promises or any coercion); <u>Griffin</u>, 983 F.2d at 1543 ("Where a promise of leniency has been made in exchange for a statement, an inculpatory statement would be the product of inducement, and thus not an act of free will." (internal quote marks and citation omitted)); <u>United States v. Garot</u>, 801 F.2d 1241, 1245 (10th Cir. 1986) ("The question in 'plea bargaining' situations is . . . whether the promise was coercive in nature, <u>i.e.</u> whether the accused was so gripped by the hope of leniency that he did not or could not freely and rationally choose among the available courses of action."); <u>United States v. Fountain</u>, 776 F.2d 878, 885 (10th Cir. 1985) ("[T]he Fifth Amendment [] . . . prohibits the admission of incriminating statements obtained by Government acts, threats or promises which permit the defendant's will to be overborne and thus rendered involuntary.").

All of these opinions were released before the events in this case. Thus, it was clearly established at the time of the interrogation that a promise of leniency may render a confession involuntary if it was sufficiently compelling and linked to the confession so that it could be said that the defendant's will was overcome by the offer. Further, considering the totality of the circumstances adds the fact that Cooper lied about the evidence against Eaves. Though the lies themselves are not unconstitutional, a reasonable official should have been aware that adding the lies to the apparent promises would make it more likely that the confession

- 25 -

would be considered involuntary. In addition, even though the Tenth Circuit has not previously addressed the issue, given the authority from other circuits a reasonable official would have known that using Eaves's involuntary confession against Clanton would violate her due process rights. See Seamons v. Snow, 84 F.3d 1226, 1238 (10th Cir. 1996) (the weight of authority of other circuit courts suffices to clearly establish the law).

The district court concluded that "the totality of the circumstances surrounding Eaves' interrogation gives rise to an atmosphere which to this Court's conclusion that any statements arising from these circumstances cannot be said to be 'freely self-determined' or of 'free will.'" Under Johnson this is sufficient to preclude our review on interlocutory appeal, because coercion is a factual issue that must be evaluated on the entire record.

## CONCLUSION

The district court's decision to deny Cooper qualified immunity is AFFIRMED.