**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRANT L. CORDER,

    Plaintiff-Appellee,

v.

DENVER, CITY AND COUNTY OF,
a municipality; PUBLIC SERVICE
COMPANY OF COLORADO, a
Colorado corporation,

    Defendants,

    and

B. ALOIA, R. McGINTY, S.
MURPHY, S. OLIN, J. LEAHY, C.
CHENEY, individuals,

    Defendants-Appellants.

No. 98-1453
(District of Colorado)
(D.C. No. 96-D-2524)

---

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **MURPHY**, Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and **ROGERS**,[**] Senior District Judge.

I.  INTRODUCTION

Plaintiff-Appellee Brant Corder brought suit against Denver Police Officers B. Aloia, R. McGinty, S. Murphy, S. Olin and Denver Deputy Sheriffs J. Leahy and C. Cheney (collectively "the officers"), alleging that the officers violated his Fourth Amendment right to be free from post-arrest excessive force.  *See* 42 U.S.C. § 1983.  The officers bring this interlocutory appeal from the denial of their motion for summary judgment based on qualified immunity.  This court has jurisdiction pursuant to 28 U.S.C. § 1291 to determine whether, under Corder's version of the facts, the officers violated clearly established law.  Given the evidence viewed in the light most favorable to Corder, the officers violated clearly established law by acting in an objectively unreasonable manner while making an arrest.  The officers' claim for statutory immunity from Corder's pendant state law claims also fails.  Accordingly, this court **affirms** the order of the district court denying the officers' motion for summary judgment based on qualified immunity.

---

[**]Honorable Richard D. Rogers, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

## II. FACTS AND PROCEDURAL HISTORY

The following statement of facts is set forth in the light most favorable to Corder, with all reasonable inferences from the record drawn in his favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir. 1997). Corder is six feet, four inches tall and at the time of the arrest weighed approximately 315 pounds. On the evening of February 21, 1996, he consumed several alcoholic drinks at the Cadillac Ranch restaurant in Denver, Colorado. The bartender eventually told Corder he would not serve him any more alcohol, and Corder left the restaurant in an intoxicated state. Although the events immediately preceding and following Corder's exit from the restaurant are not clear, several witnesses told police officers that Corder had hit one person and threatened another.[1] Four Denver police officers, Aloia, McGinty, Murphy, and Olin, arrived at the scene and Corder was placed under arrest. At the time of the arrest, Corder was loud, obnoxious, and verbally threatening.

After Corder was arrested, a sheriff's transport van was called to transport him to the jail. While waiting for the van, Corder continued to yell and verbally threaten the officers, but he remained seated where the officers had placed him

---

[1]The person Corder allegedly assaulted was never identified. The complaint which was signed at the scene alleged only that Corder had been loud and belligerent in the bar and that he had said to someone "I'm going to kick your ass."

on the sidewalk. The sheriff's van arrived along with Deputy Sheriffs Leahy and Cheney. Corder stepped into the back of the van voluntarily. After the van doors were closed, however, he began kicking the doors and yelling. According to one eye witness, the van pulled away and traveled fifteen to thirty feet before stopping. The van then began rocking violently from side to side, and the witness heard screaming coming from inside and sounds like a body throwing itself against the sides of the van. The van then backed up to a point where the back doors opened above a solid manhole cover.

According to another eyewitness, the officers then opened the back doors of the van, at which time Corder backed away from the officers toward the cab of the van. Corder continued to be verbally abusive, and one of the officers went into the van to bring him out. Although Corder, who was still in handcuffs, gave some initial resistance, he walked out of the van with the officer. Once on the street, the officers told Corder to kneel and then to lay face down. Corder voluntarily complied with these instructions.

The officers then began attempting to place leg shackles on Corder. The four Denver police officers were behind and to the sides of Corder, attempting to secure the shackles, while the two Deputy Sheriffs were restraining him by the arms or wrists. Approximately 20-25 seconds after being placed on the ground, Corder began kicking, screaming, and yelling that he was burning and "on fire."

-4-

The officers then, for the first time, put their knees on Corder's back and held him down onto the street and manhole cover. How long this struggle continued is disputed, but according to the affidavit of Corder's burn expert, Corder was probably held down for more than a minute, and possibly for as long as several minutes.[2] Eventually, one of the officers maced Corder in the face, at which time Corder went limp and lay still. Shackles were then placed on Corder's legs and he was rolled onto his side. An ambulance was called and arrived shortly thereafter; Corder was then taken to the hospital.

A subsequent temperature measurement of the manhole cover upon which Corder was held indicated a temperature of approximately 152 degrees Fahrenheit. Corder suffered severe second and third degree burns to his right arm, trunk, abdomen, and leg. Corder's burn expert, Dr. William Monafo, stated that given the surface area of the manhole cover and the severity and pattern of Corder's burns, no part of Corder's body was in contact with the manhole cover for the entire period of the struggle. Thus the expert concluded that Corder was probably on the manhole cover for "appreciably longer" than one minute and "perhaps as long as several minutes." Dr. Monafo also stated that the smell of burning flesh would have been apparent to any person nearby who had a normal

_____

[2]This expert opinion is consistent with the deposition testimony of Defendant Aloia, who stated that the struggle between Corder and the officers continued for two to three minutes.

sense of smell, and that the officers would have sensed heat emanating from the manhole cover. Indeed, one eyewitness examined the manhole cover after the incident, and found that when he held his hand approximately two inches above it, he could feel that it was "scorching hot."

Corder filed suit against the six officers, the City and County of Denver ("Denver"), and the Public Service Company of Colorado ("Public Service"). His 42 U.S.C. § 1983 complaint included federal claims against the officers and against Denver under the Fourth Amendment to the U.S. Constitution. Specifically, he alleged that the officers violated his right to be free from the use of excessive force during an arrest by holding him on the manhole cover for several minutes when it was obvious that he was being severely burned. His complaint also included state tort claims against the officers and Denver for assault and battery, intentional infliction of emotional distress, and willful and wanton conduct.

The officers moved for summary judgment on all of Corder's claims. They argued, *inter alia*, that they were entitled to qualified immunity from Corder's federal claims because they acted in an objectively reasonable manner in effecting Corder's arrest. They also argued that they enjoyed statutory immunity from Corder's pendant state tort claims. The district court denied the officers'

summary judgment motion as to both the federal and state claims,[3] and the officers immediately appealed.

III. DISCUSSION

A. Jurisdiction and Standard of Review

Corder has moved to dismiss this appeal, arguing that this court does not have interlocutory jurisdiction to review the district court's order denying summary judgment. Orders denying qualified immunity are appealable before trial to the extent that they resolve abstract issues of law. *See Clanton*, 129 F.3d at 1152. We may not at this time, however, review any determination by the district court that Corder presented sufficient evidence to survive summary judgment. *See id.* Our concern in this appeal is solely whether the evidence, viewed in the light most favorable to Corder, shows a violation of clearly established law. *See id.*; *see also Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996); *Johnson v. Jones*, 515 U.S. 304, 313-14 (1995). Within these parameters, this court has jurisdiction over this appeal. The question whether the officers

---

[3]Denver also moved for summary judgment on all of Corder's claims. The district court denied Denver's summary judgment motion as to Corder's federal claims but granted the motion on the state claims. Additionally, the officers and Denver filed cross-claims against Public Service for indemnity, and Public Service moved for summary judgment on both Corder's negligence claim and the cross-claims. The district court granted the motion as to Corder's negligence claim but denied it as to the cross-claims. Neither Denver nor Public Service is a party to this appeal.

violated clearly established law is a legal question which this court reviews *de novo*. *See Clanton*, 129 F.3d at 1153.

B. Corder's Fourth Amendment Claim

Government officials performing discretionary functions enjoy qualified immunity from civil liability so long as their conduct does not violate clearly established[4] federal statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of post-arrest excessive force are governed by the objective reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992). The issue in this case is thus whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham*, 490 U.S. at 397; *Frohmader*, 958 F.2d at 1025. The objective reasonableness test "is not capable of precise definition or mechanical application." *Graham,* 490 U.S. at

---

[4]To the extent the officers' reply brief could be interpreted as asserting that the constitutional right asserted by Corder is not clearly established, the argument is waived because it was not raised in their opening brief. *See King of the Mountain Sports, Inc. v. Chrysler Corp.,* 185 F.3d 1084, 1091 n.2 (10th Cir. 1999). Furthermore, we do not read the district court's order as resolving anything other than a post-arrest excessive force claim, and the Fourth Amendment right of an arrestee to be free from excessive force is well established. *See Graham v. Connor* , 490 U.S. 386, 395 (1989).

396 (quotation omitted). Focus must be on the facts and circumstances of the particular case, keeping in mind "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The officers argue that, given Corder's behavior and the absence of steam rising from the manhole cover or any other visible warnings indicating the manhole cover was hot, their actions were objectively reasonable. Viewing the evidence in the light most favorable to Corder, however, it becomes apparent that in spite of these circumstances, the officers did not act in an objectively reasonable manner.

The complaint which led to Corder's arrest alleged that he had been verbally abusive and had threatened one person. When he was arrested, Corder was verbally abusive, but there was no physical resistance. He caused a disturbance inside the sheriff's transport van, but when the van stopped, he exited the vehicle and voluntarily complied with the officers' instructions to lay on the pavement and manhole cover. He then, for the first time, began an active physical struggle. At the same time, however, he also began screaming that he was being burned. Although he was still in handcuffs and the officers heard his screams, they pinned him to the ground and forcibly held him there. There is also evidence in the record from which a jury could conclude that the officers felt

heat rising from the manhole cover and smelled burning flesh.[5]  Moreover, these circumstances persisted for several minutes, and the officers chose to end the struggle by macing Corder in the face.  This evidence, viewed in the light most favorable to Corder, leads this court to conclude that the officers acted in an objectively unreasonable manner.  We therefore affirm the district court's order denying the officers' motion for summary judgment based on qualified immunity.

C. State Claims - Willful and Wanton Conduct

The officers also argue that they are entitled to immunity from Corder's state law tort claims pursuant to Colo. Rev. Stat. § 24-10-118(2)(a), which provides:

> A public employee shall be immune from liability in any
> claim for injury, whether brought pursuant to . . . the
> common law, or otherwise, which lies in tort or could
> lie in tort . . . and which arises out of an act or omission
> of such employee occurring during the performance of
> his duties and within the scope of his employment
> unless the act or omission causing such injury was
> willful and wanton . . . .

---

[5]The record includes an affidavit from Corder's burn expert, Dr. Monafo. Although the officers objected to Dr. Monafo's affidavit before the district court on relevance and foundation grounds, the district court did not strike the affidavit. The officers have not asserted on appeal that the district court erred in relying on the affidavit in deciding the question of qualified immunity.  Accordingly, the issue is waived. *See King of the Mountain Sports, Inc.,* 185 F.3d at 1091 n.2. Furthermore, it is highly questionable whether they could challenge, in an interlocutory appeal, the district court's consideration of the affidavit.          *See Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997).

In their opening brief, however, the officers' entire argument for entitlement to state statutory immunity consists of the following two-sentence paragraph: "As demonstrated above, the officers acted reasonably under the totality of the circumstances while overcoming [Corder's] resistance. Therefore, the officers' conduct is not willful and wanton, and they are entitled to immunity from plaintiff's state claims against them." In light of the officers' treatment of the § 1983 and state tort claims as rising and falling together, this court's analysis of the former applies equally to the latter and defeats their argument for statutory immunity from the state law claims.

## IV. CONCLUSION

For the reasons stated above, this court **affirms** the denial by the District Court for the District of Colorado of the officers' motion for summary judgment based on qualified immunity and state statutory immunity.[6]

ENTERED FOR THE COURT:

Michael R. Murphy
Circuit Judge

---

[6]Joanne Corder's motion for substitution of party pursuant to Fed. R. App. Pro. 43(a) is **granted**.

-11-

98-1453, *Corder v. City and County of Denver*

Judge McWilliams dissents

I disagree with the majority's conclusion that the officers acted in an objectively unreasonable manner. In my view, under the described facts and circumstances, the officers acted in an objectively reasonable manner.