FILED

NOT FOR PUBLICATION

2/4/2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   AZ-12-1376-DPaKu |
| JOHN LEE CHRISTAKIS, | Bk. No.   10-18167-GBN |
| Debtor. | |
| JOHN LEE CHRISTAKIS, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| U.S. BANK, N.A., | |
| Appellee. | |

Argued and Submitted
at Tempe, Arizona on January 23, 2014

Filed - February 4, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

Appearances:     Appellant John Lee Christakis argued pro se;
Michael D. Curran, Esq., of Jaynard Cronin
Erickson Curran & Reiter, PLC, argued for
appellee, U.S. Bank. N.A.

Before: DUNN, PAPPAS and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The pro se debtor, John Lee Christakis, entered into a stipulation with the appellee, U.S. Bank, N.A. ("U.S. Bank"), to value certain residential real property located in Mesa, Arizona ("Mesa Property") for purposes of chapter 11[2] plan confirmation. The stipulation provided that, for purposes of chapter 11 plan confirmation and chapter 11 plan treatment, the Mesa Property had a value of $37,500 ("stipulated value") as of the chapter 11 plan's effective date. The stipulation further provided that U.S. Bank had a secured claim in the amount of $37,500, and an unsecured claim for the balance of its proof of claim in excess of its secured claim.

The debtor filed a disclosure statement which noted that he and U.S. Bank had agreed to the stipulated value. Shortly after the bankruptcy court approved the disclosure statement, U.S. Bank filed a motion for an election under § 1111(b), seeking to have its claim treated as fully secured for purposes of the chapter 11 plan. Under its interpretation of the stipulation, the bankruptcy court found that U.S. Bank did not intend to waive its right to make an election under § 1111(b).

On appeal, the debtor contests the bankruptcy court's interpretation of the stipulation. We DISMISS this appeal as moot because: 1) the debtor and U.S. Bank later entered into a second stipulation that supersedes the first stipulation, and

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2) the plan has been substantially consummated and a final decree has been entered.

**FACTS**[3]

Four years before he filed his chapter 11 bankruptcy petition on June 10, 2010, the debtor purchased the Mesa Property. The debtor funded the purchase of the Mesa Property through a loan with U.S. Bank's predecessor in interest.[4] The loan was secured by the Mesa Property with a trust deed.

On his Schedule A, he listed the value of the Mesa Property at $50,000. But on his Schedule D, he claimed the value of the Mesa Property was "unknown."

On September 17, 2010, U.S. Bank filed a proof of claim in the amount of $127,305.90, all of which was secured by the Mesa Property. The debtor did not object to the proof of claim.

---

[3] Neither the debtor nor U.S. Bank provided us with a number of documents relevant to this appeal. We therefore obtained access to and took judicial notice of these documents from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] According to U.S. Bank, Corstar Financial, Inc. was the original lender. Appellee's Opening Brief at 2. The trust deed was specially indorsed to Bank of America, N.A. ("Bank of America"), as trustee successor by merger to LaSalle Bank, N.A. ("LaSalle Bank"). Id. U.S. Bank later acquired the trust deed from Bank of America. Id.
Although Bank of America had participated in the debtor's chapter 11 bankruptcy case before U.S. Bank acquired the trust deed, we attribute to U.S. Bank all actions taken by Bank of America.

Three months later, the debtor filed a motion to determine the value of the Mesa Property ("Mesa Property Valuation Motion") "for the purposes of completing his Chapter 11 Plan." He contended that the Mesa Property had a value of $38,000. U.S. Bank opposed the Mesa Property Valuation Motion, arguing that the Mesa Property had a value of $55,700.

The debtor and U.S. Bank eventually entered into a stipulation ("First Stipulation"), agreeing to value the Mesa Property at $37,500 ("stipulated value"). The debtor filed the First Stipulation with the bankruptcy court on November 29, 2011. Both the debtor and counsel for U.S. Bank signed the First Stipulation.

The First Stipulation contained the following relevant provisions:

> 3. For purposes of confirmation and plan treatment, the parties agree that the value of the [Mesa Property], as of the effective date of confirmation, shall be set at $37,500. In addition to its secured claim of $37,500, [U.S. Bank] shall have an unsecured claim for the balance of its Proof of Claim in excess of its secured claim.
> 4. This Stipulation, which shall be subject to Bankruptcy Court approval, shall be incorporated into Debtors' [sic] confirmed Chapter 11 Plan and may not be altered in any way by subsequently amending it and/or by filing an Amended Chapter 11 Plan or an Amended Disclosure Statement, unless agreed [to] by the [p]arties in writing.

The bankruptcy court entered an order approving the First Stipulation ("First Stipulation Order") on December 21, 2011. The First Stipulation Order simply provided:

> The parties having agreed to the terms set forth in the [First Stipulation], at docket #365, are bound, subject to the confirmation of [the] debtor's Chapter 11 Plan, by the terms of their stipulation which shall be the Order of this Court.

-4-

Two months following the entry of the First Stipulation Order, the debtor submitted a disclosure statement. In the disclosure statement, he described the Mesa Property as follows:

> The Debtor owns a single-family residence located [in Mesa, Arizona]. The Debtor and Bank of America have stipulated to a property value of $37,500. [The] Debtor believes that [U.S. Bank] owns the loan and lien held against the property and is the creditor and Chase Bank is the loan servicer. [U.S. Bank] filed a secured proof of claim in the amount of $127,305.90. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the property for the benefit of the estate.

U.S. Bank did not object to the disclosure statement. The bankruptcy court entered an order approving the disclosure statement on March 27, 2012.

Two days later, U.S. Bank filed a motion under § 1111(b) ("Section 1111(b) Motion"), seeking to have its claim treated as fully secured for purposes of the debtor's chapter 11 plan. U.S. Bank acknowledged that it filed the Section 1111(b) Motion untimely. U.S. Bank explained that it tried to file the Section 1111(b) Motion on February 16, 2012, but it improperly submitted the Section 1111(b) Motion due to an electronic filing error. U.S. Bank requested that the bankruptcy court allow the Section 1111(b) Motion using its equitable powers under § 105. Alternatively, U.S. Bank asked that its untimely filing of the Section 1111(b) Motion be deemed excusable neglect under Civil Rule 60(b)(1).

The bankruptcy court agreed that U.S. Bank "did not timely make that [§ 1111(b)] election." Tr. of June 4, 2012 hr'g, 13:3-4. However, it decided to "utilize excusable neglect [under Civil Rule 60(b)] to disregard the fact that [U.S. Bank] didn't

-5-

timely file the [Section 1111(b) Motion] like it should have." Tr. of June 4, 2012 hr'g, 14:2-4. The bankruptcy court based its determination on the belief that "there's, very frankly, little to suggest that the few extra days in filing the [Section 1111(b) Motion] would be – would be prejudicial [to the debtor]." Tr. of June 4, 2012 hr'g, 13:21-23. It also believed that U.S. Bank did not act in bad faith in filing the Section 1111(b) Motion untimely. Tr. of June 4, 2012 hr'g, 13:25, 14:1.

On appeal, the debtor does not raise any issue as to the timeliness of the Section 1111(b) Motion, and accordingly, any such issue on appeal is waived. Sanchez v. Pac. Powder Co., 147 F.3d 1097, 1100 (9th Cir. 1998)("Ordinarily, a party's failure to raise an issue in the opening brief constitutes a waiver of that issue."). We therefore do not address it further.

U.S. Bank explained that it made the § 1111(b) election because it believed that, under the disclosure statement, the debtor intended to reduce its secured claim to the stipulated value. It contended that the First Stipulation only operated as a motion under § 506(a) because it focused on the Mesa Property's value. It pointed out that the parties did not agree to any other necessary terms, such as the interest rate or the term of a modified loan, in the First Stipulation.

U.S. Bank further claimed that the First Stipulation did not explicitly bar its right to make a § 1111(b) election. U.S. Bank argued that the parties entered into the First Stipulation because it was necessary to determine the Mesa Property's value before they could negotiate the treatment of U.S. Bank's claim under the debtor's chapter 11 plan.

-6-

The debtor responded that U.S. Bank was bound by the terms of the First Stipulation for purposes of chapter 11 plan confirmation and chapter 11 plan treatment.

Meanwhile, on April 2, 2012, the debtor filed his chapter 11 plan. Under the chapter 11 plan, he placed U.S. Bank and two other secured creditors, OneWest Bank, FSB and HSBC Bank, into Class 3. The Class 3 creditors each held liens secured by different real properties.

With respect to U.S. Bank, the debtor characterized its claim as disputed. He proposed that U.S. Bank's secured claim be considered an allowed secured claim at $37,500, to be re-amortized with a variable interest rate. The debtor then proposed that the unsecured portion of U.S. Bank's claim (i.e., the amount beyond the stipulated value) be treated as an unsecured claim.

U.S. Bank objected to confirmation of the debtor's chapter 11 plan ("Initial Plan Objection"). It argued that if its Section 1111(b) Motion were approved, it would be entitled to a fully secured claim in the amount stated in its proof of claim. U.S. Bank again stressed that it was not objecting to the stipulated value but rather was asserting its right to make an election under § 1111(b). It also argued that the debtor's chapter 11 plan did not provide adequate means for its implementation, did not provide an appropriate interest rate, was not feasible and violated the absolute priority rule.

The debtor responded by again asserting that U.S. Bank was bound by the terms of the First Stipulation. He further contended that U.S. Bank was barred from making a § 1111(b)

-7-

election because the other members of Class 3 did not move to make the same election. Because Class 3 had not elected § 1111(b) treatment by two-thirds in amount and more than half in number, U.S. Bank failed to meet the criteria necessary for a § 1111(b) election.

On June 4, 2012, the bankruptcy court held a hearing on confirmation of the chapter 11 plan ("Plan Confirmation Hearing"). At the Plan Confirmation Hearing, U.S. Bank argued for the first time, that the chapter 11 plan violated § 1122(a) in that it improperly placed secured creditors with unrelated claims into one class. Specifically, U.S. Bank claimed that the debtor had grouped into Class 3 three different creditors with secured claims against three different real properties.

The bankruptcy court addressed both the Section 1111(b) Motion and the Initial Plan Objection at the Plan Confirmation Hearing. With respect to the Section 1111(b) Motion, the bankruptcy court advised the parties that it did not read the First Stipulation as establishing only the Mesa Property's value. Rather, it noted that "[t]here was also an important provision [in the First Stipulation] that established the amount of [U.S. Bank's] unsecured claim." Tr. of June 4, 2012 hr'g, 9:19-21. It mentioned that "[Section] 506 play[ed] no role in a successful [§] 1111(b) election . . . ." Tr. of June 4, 2012 hr'g, 10:1-2.

Having questioned both the debtor and counsel for U.S. Bank, the bankruptcy court determined that "the parties did not have [§] 1111(b) in mind" when they entered into the First Stipulation. Tr. of June 4, 2012 hr'g, 14:15. The bankruptcy

-8-

court "[got] the impression [that] the parties, frankly, missed this particular issue [of a §1111(b)] election . . . [given] there's nothing in the stipulation that expressly waive[d] the [§] 1111[b] election." Tr. of June 4, 2012 hr'g, 14:20-22.

However, it acknowledged that the First Stipulation was problematic because it "expressly provid[ed] for an unsecured claim for the balance [of U.S. Bank's claim]." Tr. of June 4, 2012 hr'g, 14:7-8. The bankruptcy court noted that U.S. Bank's "proof of claim beyond $37,500 would be totally irrelevant in an 1111(b) election." Tr. of June 4, 2012 hr'g, 14:8-10. It confessed that "it's tempting to find that this was a waiver of that provision," but it was uncomfortable coming to such a determination as neither U.S. Bank nor the debtor considered § 1111(b) when entering the First Stipulation. Tr. of June 4, 2012 hr'g, 14:10-11.

The bankruptcy court further expressed concern as to whether the requisite majority of the creditor class made the § 1111(b) election. It wondered "[i]f the [§ 1111(b)] election is not made by the class as a whole, then [would] the nonelection bind[] all class members[?]" Tr. of June 4, 2012 hr'g, 15:24-25, 16:1.

In the end, the bankruptcy court denied U.S. Bank's Section 1111(b) Motion and overruled its Initial Plan Objection. However, it informed the parties that its decision would "be subject to reconsideration." Tr. of June 4, 2012 hr'g, 16:11. It told U.S. Bank that

> if [it could] be convinced that class composition is wrong and is in violation of Section 1122 and that there are grounds to allow that objection at this point to confirmation of the plan, then – then that would destroy the argument that the class can elect not to

-9-

elect. Tr. of June 4, 2012 hr'g, 15-21. The bankruptcy court continued the Plan Confirmation Hearing to June 15, 2012 ("Continued Plan Confirmation Hearing").

U.S. Bank filed an amended objection to confirmation ("Amended Plan Objection"), repeating all of its arguments in the Initial Plan Objection. But U.S. Bank added an argument that the debtor's chapter 11 plan violated § 1122(a) by placing U.S. Bank in a class composed of secured creditors with substantially dissimilar claims.

On June 13, 2012, the debtor filed a response titled, "Emergency Response to Creditor's Amended Objection to Confirmation of Chapter 11 Plan of Reorganization, and/or, in the Alternative, Motion to Reconsider the Reversing of the Court's Order at Docket Entry #369 [i.e., Stipulated Order]" ("Emergency Response")(docket no. 433). He alleged that U.S. Bank was trying to "reverse" the Stipulated Order, even though he and U.S. Bank had agreed to cram down its claim.

The debtor included in the Emergency Response copies of checks representing payments made pursuant to the First Stipulation. He also provided copies of email communications between himself and counsel for U.S. Bank in support of his argument. In an email communication dated January 21, 2011, counsel for U.S. Bank had stated in relevant part:

> As for the treatment of the crammed-down claim, our client will request an interest rate of 6.0% amortized over a term of 30 years, with payments to begin March 1, 2011. If you agree to this treatment, our office will prepare a stipulation for your review and execution. In addition to outlining the terms of the loan, the stipulation will also include default

-10-

provisions and a provision stating that [U.S. Bank] accepts your Plan.

In another email communication dated September 26, 2011, counsel for U.S. Bank had asked that the debtor

insert a provision that states, "In addition to its secured claim of $37,500, Creditor shall have an unsecured claim for the balance of its claim in excess of its secured claim."

The debtor contended that, contrary to U.S. Bank's argument on § 1122(a), claims secured by different real properties could be placed in the same class. He relied on two out-of-circuit bankruptcy decisions, In re Palisades-on-the-Desplaines, 89 F.2d 214 (7th Cir. 1937), and In re Sullivan, 26 B.R. 677 (Bankr. W.D.N.Y. 1982), in support of his argument. According to the debtor, these two cases established an exception to § 1122(a). Under Palisades-on-the-Desplaines and Sullivan, a chapter 11 plan may group secured creditors with dissimilar claims in the same class as long as the different real properties "are in the same location, purchased at approximately the same time, and thus worth roughly the same amount."

He pointed out that in his chapter 11 plan, the three creditors in Class 3 had real properties that bore the following similarities: 1) they were secured by senior trust deeds; 2) the debt owed is evidenced by a promissory note; 3) they were located in Arizona; 4) they were all single-family residences; 5) they were purchased by the debtor at approximately the same time; 6) the debts on the real properties matured at the same time; and 7) the remedy for each creditor on the promissory note was the same.

Notably, although the debtor stated in the Emergency

-11-

Response's caption that the Emergency Response alternatively was a "motion to reconsider the reversing of the [First Stipulation Order]," the debtor did not specify any order or ruling by the bankruptcy court reversing the First Stipulation Order. The debtor simply alleged that U.S. Bank was attempting to overturn the First Stipulation and the First Stipulation Order.

At the Continued Plan Confirmation Hearing, the bankruptcy court emphasized that it approved the First Stipulation and that the First Stipulation bound the debtor and U.S. Bank. But it informed the debtor that it "[did not] read [the First Stipulation] the same way [he] did." Tr. of June 15, 2012 hr'g, 6:22-23.

The bankruptcy court told the debtor and U.S. Bank that it

> doubt[ed] that you . . . thought about 1111(b) elections when you negotiated that stipulation . . . . [But] it wasn't clear to [the court] that what was intended was some type of bar to the later ability . . . . [A]n unsecured claim we know would be mooted out if somebody makes an 1111(b) election. But that is such a – an important weapon in the arsenal of a secured creditor, the election, that [it] wasn't comfortable in agreeing that the general language of the parties [sic] stipulation covered a waiver of the 1111(b) election. And another indication of that is the creditor apparently didn't read the stipulation that way either, because the creditor sure went forward thereafter and made the [§ 1111(b)] election.

Tr. of June 15, 2012 hr'g, 6:4-19.

The debtor asked the bankruptcy court to issue a ruling on the Amended Plan Objection in the event that U.S. Bank decided to appeal. The bankruptcy court reminded him it had given him a 30-day extension to file a notice of appeal. It then continued the hearing once more to July 16, 2012 ("Second Continued Plan Confirmation Hearing"). The bankruptcy court did not make any

-12-

other determination nor issue any ruling or order on the debtor's Emergency Response.

Two weeks before the Second Continued Plan Confirmation Hearing, the debtor submitted a second amended chapter 11 plan ("Second Amended Plan"). The Second Amended Plan proposed to place each secured creditor in its own separate class; it placed U.S. Bank into Class 7. It provided that the debtor and U.S. Bank were "working to reach a stipulation for treatment of the Claim under the creditor's 1111(b) election." If they agreed on treatment of U.S. Bank's claim, "then the terms of the stipulation shall control the treatment of the Claim in the Chapter 11 Plan." Moreover, if the debtor and U.S. Bank "stipulate[d] for treatment under creditor's [§] 1111(b) election, then the stipulation shall be specifically incorporated herein, and, to the extent there are any inconsistencies between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control."

The Second Amended Plan noted that the debtor was appealing the bankruptcy court's decision "reversing . . . [its] Order binding the parties to the stipulation and/or the Court's re-interpretation of the words of the stipulation." It described the bankruptcy court's decision as one "determining that the stipulation . . . was only a valuation of the property and was not an agreement to treat the property as having a principle [sic] balance due of $37,500."

It further explained that if the debtor did not prevail on appeal, U.S. Bank's claim would be treated under its § 1111(b) election. But if the debtor prevailed on appeal, then

-13-

U.S. Bank's claim, "as to the value and the principle [sic] loan balance," would be treated pursuant to the First Stipulation's terms.

On July 12, 2012, four days before the Second Continued Plan Confirmation Hearing, the debtor and U.S. Bank filed a stipulation ("Second Stipulation"). Both the debtor and U.S. Bank signed the Second Stipulation. The bankruptcy court entered an order ("Second Stipulation Order") approving the Second Stipulation on July 16, 2012.

Under the Second Stipulation, U.S. Bank had a fully secured claim to be paid over 360 months. The Second Stipulation did not state the amount of U.S. Bank's claim. Instead, it set forth the terms of payment on the claim: $134.12 for the first 120 months then $530.45 for the remaining 240 months, for payments totaling $143,403.60. It provided that U.S. Bank's claim would be placed in a separate class from other secured creditors in the chapter 11 plan.

The Second Stipulation also provided that its

terms may not be modified, altered, or changed by the Plan, any confirmation order thereon, any subsequently filed Amended Chapter 11 Plan of Reorganization and confirmation order thereon without the express written consent of the [sic] U.S. Bank. The terms of this Stipulation shall be incorporated into the Plan and/or any subsequently filed Amended Chapter 11 Plan of Reorganization.

The debtor neither sought reconsideration of the Second Stipulation and the Second Stipulation Order nor appealed them. The bankruptcy court entered an order confirming the debtor's chapter 11 plan on July 20, 2012.

Shortly before the Second Continued Plan Confirmation

Hearing, the debtor filed a motion titled, "Emergency Request for a Ruling on Debtor's Motion to Reconsider the Reversing [Interpretation] of the Court's Order at Docket Entry #369" ("Emergency Request"). In the Emergency Request, the debtor asked the bankruptcy court to issue a ruling on the Emergency Response. Specifically, he asked that the bankruptcy court rule on his earlier "motion to reconsider the reversing of the court's [First Stipulation Order]."

At the Second Continued Plan Confirmation Hearing, the bankruptcy court asked the debtor if the Emergency Request was a motion for reconsideration. The debtor explained that in the Emergency Response, he had sought reconsideration of the bankruptcy court's interpretation of the First Stipulation. He merely was seeking confirmation of the bankruptcy court's denial of the "request for reconsideration" made in the Emergency Response. The debtor informed the bankruptcy court that the Emergency Request simply was "a request for the ruling." Tr. of July 16, 2012 hr'g, 2:8-9. He pointed out that U.S. Bank had not submitted a proposed order on the Emergency Response.

The bankruptcy court granted the debtor's request to deny the Emergency Response. It confirmed that he "could believe that the motion to reconsider [i.e., the Emergency Response] was denied." Tr. of July 16, 2012 hr'g, 3:10-11. No formal order was forthcoming on the debtor's Emergency Response, however.

Consequently, on October 1, 2012, the debtor filed a document titled, "Emergency Notice of Uploading an Order Denying Debtor's Motion to Reconsider the Reversing/Interpretation of the Court's Order at Docket Entry #369, or in the Alternative, Motion

-15-

for an Order Denying Debtor's Motion to Reconsider the Reversing/Interpretation of the Court's Order at Docket Entry #369 and Motion for an Accelerated Hearing" ("Request for Emergency Response Order"). He asked that the bankruptcy court enter an order on the Emergency Response. He also sought an expedited hearing on the matter.

The bankruptcy court held a hearing on the Request for Emergency Response Order on October 10, 2012 ("Request for Emergency Response Order Hearing"). At the Request for Emergency Response Order Hearing, the bankruptcy court repeated its determination on the Section 1111(b) Motion. It also read into the record portions of the transcripts of the Continued Plan Confirmation Hearing and the Second Continued Plan Confirmation Hearing.

The bankruptcy court again confirmed that it had denied the debtor's request for reconsideration made in the Emergency Response. It notified the debtor that it would sign the proposed order he earlier had lodged with the bankruptcy court. The bankruptcy court entered this order ("Emergency Response Order")(docket no. 490) on October 11, 2012.

On October 18, 2012, the debtor moved for entry of a final decree ("Final Decree Motion")(docket no. 492), as the Second Amended Plan was "substantially consummated." He reported that he would make monthly payments to secured creditors pursuant to the Second Amended Plan, beginning on January 3, 2013.

He advised the bankruptcy court that he would seek to reopen the bankruptcy case sometime in September 2013 to obtain entry of a discharge once he completed payments on general unsecured

claims. To date, the debtor has not moved to reopen his chapter 11 case. On November 16, 2012, the bankruptcy court entered an order (docket no. 498) issuing the final decree and closing the debtor's chapter 11 case.

The debtor appealed the Emergency Response Order.

**JURISDICTION**

We cannot review an appeal if the underlying subject matter of the appeal is moot. Motor Vehicles Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 879-80 (9th Cir. 2012). Several circumstances have occurred in the debtor's chapter 11 case that raise the issue of mootness. Neither the debtor nor U.S. Bank have raised this issue, however. We nonetheless have an independent duty to determine sua sponte whether an appeal is moot. Demery v. Arpaio, 378 F.3d 1020, 1025 (9th Cir. 2004); United States v. Golden Valley Elec. Ass'n, 689 F.3d 1108, 1111 (9th Cir. 2012). We consider the issue of mootness de novo. Demery, 378 F.3d at 1025; Golden Valley Elec. Ass'n, 689 F.3d at 1111.

As a federal tribunal, our jurisdiction is limited to actual cases and controversies. Thorpe Insulation Co., 677 F.3d at 880; Golden Valley Elec. Ass'n, 689 F.3d at 1112. A matter is moot only if it is impossible for the appellate court to grant the prevailing party any effective or meaningful relief. Thorpe Insulation Co., 677 F.3d at 880; Golden Valley Elec. Ass'n, 689 F.3d at 1111. A matter is not moot so long as the parties have a concrete interest, however small, in the outcome of the litigation. Golden Valley Elec. Ass'n, 689 F.3d at 1112 (quoting

Knox v. Serv. Employees Int'l Union, 132 S.Ct. 2277, 2287 (2012) (quotation marks omitted)). If the matter becomes moot while pending on appeal, we must dismiss the appeal. I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001).

Admittedly, we have had difficulty in sorting out the factual record with regard to what the debtor is attempting to appeal. In short, the record in this appeal is a confusing muddle, and both parties and the bankruptcy court must share responsibility for the resulting confusion. Based on our review of the record and the debtor's briefs, we conclude that he essentially is contesting the bankruptcy court's interpretation of the First Stipulation.

As we recounted above, in his Emergency Response, the debtor moved for reconsideration of the bankruptcy court's interpretation of the First Stipulation. We thus focus on the Emergency Response Order, which sets forth the bankruptcy court's ruling on the debtor's motion for reconsideration.

The debtor claims that the bankruptcy court erred in interpreting the First Stipulation to allow U.S. Bank to use § 1111(b) to "back out" of its agreement to cramdown its secured claim. Although we sympathize with the debtor, we cannot grant him any effective relief for the following reasons.

First, the plan has been substantially consummated, and a final decree has been entered. The debtor himself reported in his Final Decree Motion that he would make monthly plan payments to his secured creditors starting sometime in January 2013. Presumably, the debtor has begun making payments to his secured creditors (otherwise, he would risk default). Also presumably,

-18-

these payments to secured creditors included payments to U.S. Bank in the amounts specified in the Second Stipulation. By making payments to the secured creditors, including U.S. Bank, the debtor has effectively submitted to U.S. Bank's assertion as to its secured claim amount.

Second, the debtor and U.S. Bank entered into the Second Stipulation which supplants the First Stipulation.[5] The Second Stipulation characterized U.S. Bank's claim as fully secured. Although it did not list the amount of U.S. Bank's fully secured claim, the Second Stipulation set forth payment terms; the payments to be made under the chapter 11 plan totaled $143,403.60, far in excess of what would be paid to U.S. Bank on its secured claim under the First Stipulation.

Moreover, the Second Stipulation expressly provided that its terms were to be incorporated into the chapter 11 plan. It also prohibited altering the terms of the Second Stipulation without U.S. Bank's written consent. The debtor has not indicated that he has obtained U.S. Bank's written consent to change the Second Stipulation's terms concerning payment of U.S. Bank's secured claim.

Because we cannot grant any effectual or meaningful relief to the debtor, we determine that the debtor's appeal of the Emergency Response Order is moot.

---

[5] U.S. Bank earlier tried to dismiss the appeal on several grounds, including the ground that the parties had entered into the Second Stipulation. It failed to raise the issue of mootness, however, when it argued for dismissal on this ground. The Motions Panel denied U.S. Bank's motion to dismiss the appeal.

**CONCLUSION**

For the foregoing reasons, we DISMISS this appeal as moot.